DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Anthony L. Secession, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} Secession has had a long relationship with Leona Wilson, age thirty-one. At age fifteen, Wilson gave birth to their daughter, Laquanda Wilson. There has been much tension between Secession and Wilson in their relationship. In October, 2006, Secession sent threatening letters from prison to Wilson. Wilson gave these letters to the Akron Police Department for protection purposes. After *Page 2 
being released from prison, Secession saw Wilson at a gasoline station in May, 2007, and threatened to blow up her house. On June 27, 2007, Secession and Wilson were fighting over a cell phone. Laquanda was alone in Wilson's home when Secession entered. Secession told Laquanda to stay upstairs while he destroyed furniture, broke a large screen television, and cut up photos downstairs. Laquanda sent a text message to her mother warning her to stay away because "Dad's trippin'." Wilson signed charges against Secession and a warrant was issued for his arrest. On July 3, 2007, Secession returned to Wilson's house around 3:00 a.m. Wilson told Secession she had a protection order and that he was not to be there. Laquanda called 911. Wilson and her daughter left the house and jumped into a police cruiser that had arrived on scene. Secession fled. He was eventually arrested on July 11, 2007.
 {¶ 3} Secession was indicted for two counts of burglary in violation of R.C. 2911.12(A)(2), one count of disrupting public service in violation of R.C. 2909.04(A)(1), one count of menacing by stalking in violation of R.C. 2903.211(A)(1), two counts of aggravated trespassing in violation of R.C. 2911.211, and one count of criminal damaging in violation of R.C. 2909.06(A)(1). At a jury trial that commenced on October 9, 2007, Secession was found guilty of menacing by stalking, a felony of the fourth degree; one count of aggravated trespass, a misdemeanor of the first degree; and one count of criminal damaging, a misdemeanor of the second degree. The jury acquitted Secession on all other *Page 3 
counts. The trial court sentenced Secession to a total of twenty-seven months inprison.
 {¶ 4} Secession has timely appealed his conviction of menacing by stalking, raising one assignment of error for our review.
 II Assignment of Error "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT APPELLANT'S CONVICTION OF MENACING BY STALKING."
 {¶ 5} In his single assignment of error, Secession contends that there was insufficient evidence to support his conviction of menacing by stalking. We disagree.
 {¶ 6} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal *** if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." State v. Thompkins (1997), 78 Ohio St.3d 380, 386, overruled on other grounds. Accordingly, "the relevant question is whether, after viewing the evidence in the *Page 4 
light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) Jackson v. Virginia (1979), 443 U.S. 307,319.
 {¶ 7} Secession was convicted of menacing by stalking in violation of R.C. 2903.211(A)(1) which provides:
 "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."
R.C. 2903.211(D)(1) defines pattern of conduct as "two or more actions or incidents closely related in time[.]" R.C. 2901.22(B) states:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
R.C. 2901.01(A)(3) indicates that physical harm to persons "means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2903.211(D)(2) defines mental distress as either "[a]ny mental illness or condition that involves some temporary substantial incapacity" or "[a]ny mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services[.]" After reviewing the record, we conclude that the evidence was sufficient for the jury to find Secession guilty of menacing by stalking beyond a reasonable doubt pursuant to these statutory provisions. *Page 5 
 {¶ 8} Secession argues that Wilson did not indicate in her testimony that she was fearful that Secession would cause her physical harm or mental distress. Secession argues that Wilson testified that the matter has been "blown out of proportion" and that she only signed charges against him at the insistence of police officers. However, her actions and the testimony of others speak otherwise.
 {¶ 9} The recent history of the relationship between Secession and Wilson suggest Secession would have known that his actions in the instant case would cause Wilson to believe that he was going to physically harm her. In October, 2006, Secession wrote several threatening letters to Wilson from prison shortly before his release. The letters indicated that Secession dreamed about Wilson's death. Officer Edward Stewart testified Wilson told him she felt threatened by these letters when she brought them to him. Also, Wilson's sister, Natina Wilson, testified that Secession and Wilson constantly argued throughout their relationship. Wilson herself testified that Secession and she often fought over other women. In May, 2007, Wilson saw Secession at a gasoline station. Secession had a gasoline can with him and threatened to blow up Wilson's house.
 {¶ 10} With respect to the incidents giving rise to the indictments in the instant case, on June 27, 2007, Secession and Wilson argued about his cell phone. Secession came over to Wilson's house when Laquanda was at home alone. Laquanda testified he told her to stay upstairs or he would "beat her ass." He proceeded to slash Wilson's furniture, smash and spit upon her large screen TV, *Page 6 
and tear up photos in the downstairs living area. Laquanda testified that after this incident, Wilson and she stayed elsewhere for several days out of concern for Secession's whereabouts.
 {¶ 11} The second incident occurred on July 3, 2007, when Secession returned to Wilson's home around 3:00 a.m. Both Wilson and Laquanda were there. Wilson testified that she told Secession to stop calling her phone and to stop harassing her. Laquanda testified that she called 911 because her mother and father were arguing and she wanted some peace. She indicated she had called the police on other occasions for the same reason. Officer Linda McCain testified that after she arrived on scene, she called for backup when she saw Secession at the house. Shortly afterward, Wilson and Laquanda ran out of the house in their pajamas, jumped into the back seat of Officer McCain's police cruiser, and screamed and yelled that Secession was in the house. Officer McCain testified that Laquanda was "absolutely petrified." She testified that Wilson jumped back out of the car, paced back and forth, and kept saying "he is in there." Officer McCain told Wilson she was not going inside the house until backup came. Officer McCain reassured Wilson and her daughter that they were safe with her and that Secession would not come near the police cruiser. By the time the backup officers arrived, Secession had left the house.
 {¶ 12} Despite Wilson's reluctance to testify, the evidence, when viewed in the light most favorable to the prosecution, is sufficient for a rational trier of fact *Page 7 
to find the essential elements of menacing by stalking were present beyond a reasonable doubt. There were two incidents related closely in time to establish a pattern of conduct. From Wilson's actions and the testimony of others, it is reasonable for a rational juror to conclude that Wilson feared for her physical safety and believed Secession would injure her. It is also reasonable for a rational juror to conclude that Secession was aware that his conduct would cause Wilson to believe he would harm her physically. We find there was sufficient evidence to support Secession's conviction of menacing by stalking. Accordingly, Secession's sole assignment of error is overruled.
 III {¶ 13} Secession's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 8 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 Slaby, J., Moore, P. J., Concur. *Page 1