The STATE of Ohio, Appellee,

v.

PAYNE, Appellant.

[Cite as *State v. Payne,* 178 Ohio App.3d 617, 2008-Ohio-5447.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 24081.

Decided Oct. 22, 2008.

618

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Greta L. Johnson, Assistant Prosecuting Attorney, for appellee.

Thomas M. Parker, for appellant.

Moore, Presiding Judge.

{¶ 1} Appellant, Michael Payne, appeals his conviction from the Summit County Court of Common Pleas. This court affirms.

I

{¶ 2} Payne was indicted on October 1, 2007 on one count of menacing by stalking in violation of R.C. 2903.211(A), a fourth-degree felony. The indictment alleged that on September 18, 2007, Payne continually drove his car through the neighborhood of the victim, Alesha Austin, in a manner knowingly intended to cause her mental distress. Payne pleaded not guilty.

{¶ 3} On October 10, 2007, Payne filed an affidavit of indigency, seeking appointed counsel. On October 22, 2007, the trial court appointed defense counsel for Payne. On January 7, 2008, following discovery and a pretrial hearing, the case proceeded to jury trial. Payne was convicted on January 9, 2008, and later sentenced to 18 months of incarceration.

{¶ 4} Payne filed a notice of appeal to this court on February 14, 2008. He raises four assignments of error for our review.

II

### ASSIGNMENT OF ERROR I

The jury verdict under which Michael Payne was convicted of menacing by stalking was based on insufficient evidence.

{¶ 5} In his first assignment of error, Payne contends that his conviction was based on insufficient evidence as a matter of law. We disagree.

{¶ 6} When considering a challenge based on the sufficiency of the evidence, this court must determine whether the prosecution has met its burden of production. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (Cook, J., concurring). In determining whether the evidence was sufficient to sustain a conviction, a court must view that evidence in a light most favorable to the prosecution:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

Payne was convicted under R.C. 2903.211, which provides:

(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.

{¶ 7} Payne challenges the sufficiency of the evidence leading to his conviction with respect to two elements of the offense: the victim's mental distress or, alternatively, the victim's belief that the offender would cause physical harm to the victim; and the existence of a "pattern of conduct."

{¶ 8} The Ohio Revised Code defines "mental distress" as any of the following: "(a) Any mental illness or condition that involves some temporary substantial incapacity;

"(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2)(a), (b).

Austin testified that "[she] was afraid to leave" because Payne was driving down her street, explaining that "I didn't know what he was going to do.  * * * I didn't know why he was riding past my house."  She later testified that she was terrified for approximately six hours.  The officer who arrived at the scene following a call placed by Myron Austin, the victim's father, described her demeanor as "intimidated, nervous, very timid, like something was wrong."  He also noted that "[s]he seemed kind of fearful."

{¶ 9} Austin's inability to leave her house due to her fear of Payne is sufficient to find that she suffered some "temporary substantial incapacity" due to the mental distress caused by Payne's conduct.  "Substantial incapacity does not mean that the victim must be hospitalized, or totally unable to care for herself. Incapacity is substantial if it has a significant impact upon the victim's daily life." *State v. Horsley,* 10th Dist. No. 05AP–350, 2006-Ohio-1208, 2006 WL 648849, at ¶ 48.  It is sufficient that Austin was so fearful as to be unable to leave her home for the approximately six and one-half hours Payne continued to drive past.  This incident, albeit brief, made a significant impact on Austin's daily activities.

{¶ 10} Evidence may also be considered in light of the recent history between the victim and the defendant. *State v. Secession,* 9th Dist. No. 23958, 2008-Ohio-2531, 2008 WL 2192808, at ¶ 9.  Austin testified that her relationship with Payne was "a rocky one" and that he was "abusive mentally and physically," describing the time during which they were dating as "very, very stressful."  Austin also testified that Payne had been previously convicted of domestic violence against

her, from which she received an injury to her right eye, and that Payne's past actions had made her afraid of him. She recounted an incident in which Payne followed her while she was riding in a cab, prompting the cab driver to stop a police cruiser. Considering such evidence in the light most favorable to the state, Austin had ample reason to fear that Payne would cause her physical injury. We therefore conclude that the evidence was sufficient for a rational juror to find, beyond a reasonable doubt, that Payne caused mental distress to Austin.

{¶ 11} Payne also contends that his actions did not constitute a "pattern of conduct," claiming that he engaged in only a single act that day—driving through Alesha Austin's neighborhood. The statute defines "pattern of conduct" as "two or more actions or incidents closely related in time." R.C. 2903.211(D)(1). However, we consider each of Payne's acts of driving past Austin's home a separate "action" or "incident" under the statute. At least two of the state's witnesses saw Payne drive past Austin's home multiple times. Barbara Walker testified that "[Payne] passed by here at least twice." Also, Myron Austin testified that he "personally saw him" drive by "[a]t least three or four" times.

{¶ 12} To determine whether two or more incidents were "closely related in time," the incidents in question should be resolved by the trier of fact " 'considering the evidence in the context of all the circumstances of the case.' " *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, at ¶ 10, quoting *State v. Honeycutt*, 2d Dist. No. 19004, 2002-Ohio-3490, 2002 WL 1438648, at ¶ 26. Walker testified that Payne began driving past Austin's house around 2:45 p.m., shortly before Austin and her father arrived home. Alesha Austin testified that Payne continued to drive past Austin's home until around 9:00 p.m., when the police arrived. The relatively short time between each of the incidents, taken in the context of Austin's prior relationship with Payne and the belief that he may have intended to cause her physical harm, renders them "closely related in time." This constitutes a "pattern of conduct" sufficient for the jury to find Payne guilty of violating the statute. Accordingly, Payne's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

The trial court erred by improperly admitting certain evidence of other acts attributed to Michael Payne.

{¶ 13} In his second assignment of error, Payne argues that the trial court improperly admitted testimony from his former girlfriend, Sharon Kaiser, regarding his history of violence during and after their relationship. We disagree.

{¶ 14} We review the admission of Kaiser's testimony under an abuse-of-discretion standard. The term "abuse of discretion" connotes more than an error

of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Trial courts have broad discretion over whether to admit or exclude relevant, admissible evidence as unduly cumulative or prejudicial. Evid.R. 403(B); see also *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, at ¶ 172, quoting *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. Payne's counsel objected to questions as to why Kaiser's relationship with Payne was "[h]orrible," Kaiser's testimony that Payne entered her home without her permission, and her state of mind "when that was going on," as well as to Kaiser being allowed to read from a 1999 complaint she had filed against Payne. Menacing by stalking, normally a first-degree misdemeanor, is a fourth-degree felony if a jury finds that any of eight circumstances exist. R.C. 2903.211(B)(2). One of the circumstances is where the offender has a history of violent acts toward the victim or "any other person." R.C. 2903.211(B)(2)(e). Another exists where the offender has a prior menacing-by-stalking conviction. R.C. 2903.211(B)(2)(a). In this case, the state offered Kaiser's testimony both to show Payne's history of violence in their relationship, as well as to prove Payne's prior menacing-by-stalking conviction.

{¶ 15} Payne concedes that Kaiser's testimony was admitted for a proper purpose, as an alternative to admission as proof of motive pursuant to R.C. 2945.59. Nevertheless, he contends that in light of the other evidence presented, under Evid.R. 403, Kaiser's testimony was unduly cumulative and prejudicial. However, neither R.C. 2903.211 nor Evid.R. 403(B) limits the state to one method of proof. Payne's felony conviction could have been based on any of four factors, including his history of violence toward Kaiser or Austin, or either of his prior convictions for domestic violence or menacing by stalking. Conversely, the jury could have chosen to discount evidence of any or all of the other factors as of little or no weight. Thus, the trial court did not allow a "needless presentation of cumulative evidence."

{¶ 16} Neither do we find the admission of Kaiser's testimony to be unfairly prejudicial to Payne. Although relevant, evidence may be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A). However, the decision of whether to exclude evidence under 403(A) lies with the sound discretion of the trial court. *Sage*, 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, at paragraph two of the syllabus. Kaiser's testimony was highly probative of two of the eight circumstances in which Payne's offense could be enhanced from a misdemeanor to a felony. We are unconvinced that in light of this probative value, the trial court was "unreasonable, arbitrary, or unconscionable" in admitting Kaiser's testimony. Accordingly, Payne's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

Michael Payne received ineffective assistance of counsel when his counsel did not object to all "other acts" evidence offered by the prosecution.

{¶ 17} In his third assignment of error, Payne claims that his trial counsel was ineffective in failing to object to the admission of State's Exhibits 3 and 4 and Kaiser's testimony as to Payne's prior bad acts. We do not agree.

{¶ 18} In considering a defendant's claim of ineffective assistance of counsel, this court employs a two-step process. *Strickland v. Washington* (1984), 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, we must determine whether trial counsel engaged in a " 'substantial violation of any * * * essential duties to his client.' " *State v. Bradley* (1989), 42 Ohio St.3d 136, 141, 538 N.E.2d 373, quoting *State v. Lytle* (1976), 48 Ohio St.2d 391, 396, 2 O.O.3d 495, 358 N.E.2d 623. Second, we must determine if the trial counsel's ineffectiveness resulted in prejudice to the defendant. *Bradley*, 42 Ohio St.3d at 141–142, 538 N.E.2d 373, quoting *Lytle*, 48 Ohio St.2d at 396–397, 2 O.O.3d 495, 358 N.E.2d 623.

{¶ 19} "An appellate court may analyze the prejudice prong of the *Strickland* test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice." *State v. Kordeleski*, 9th Dist. No. 02CA008046, 2003-Ohio-641, 2003 WL 294360, at ¶ 37, citing *State v. Loza* (1994), 71 Ohio St.3d 61, 83, 641 N.E.2d 1082. A defendant may demonstrate prejudice in cases where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel. *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus. To make a sufficient showing of prejudice, a defendant must demonstrate that " 'counsel's errors were so serious as to deprive the defendant of a fair trial * * * whose result is reliable.' " *State v. Colon*, 9th Dist. No. 20949, 2002-Ohio-3985, 2002 WL 1800274, at ¶ 48, quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 20} We fail to see how exclusion of Sharon Kaiser's testimony, along with State's Exhibits 3 and 4, would have changed the outcome for Payne. As previously noted, even had the trial court excluded Kaiser from testifying, there existed sufficient evidence to find Payne guilty of each of the elements of the crime beyond a reasonable doubt and subject him to the enhancement provision in R.C. 2903.211(B)(2). He also would have remained subject to R.C. 2903.211(B)(2)(e) as an offender with a "history of violence toward the victim or * * * of other violent acts toward the victim," as Alesha Austin's testimony made clear. Payne has failed to demonstrate a reasonable probability that the outcome of his trial would have been different but for the alleged errors of his trial counsel. Accordingly, Payne's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

The indictment filed against Michael Payne was invalid pursuant to the Ohio Revised Code and the Ohio Rules of Criminal Procedure.

{¶ 21} In his fourth assignment of error, Payne argues that his indictment was invalid because it was initialed, rather than signed, by the grand jury foreperson. We disagree.

{¶ 22} Ohio law requires that an indictment be indorsed by the foreperson, by including the words "a true bill" and subscribing his or her name. R.C. 2939.20. Ohio courts have long recognized a signature by mark as legally valid where the signer intended to be so bound. *In re Young* (1978), 60 Ohio App.2d 390, 393, 14 O.O.3d 359, 397 N.E.2d 1223, quoting *Sterba v. Lienhard* (App.1950), 95 N.E.2d 12, 58 Ohio Law Abs. 65. Ohio courts have also held that a foreperson's initials are a sufficient subscription. *State v. Creasey* (2001), 8th Dist. Nos. 65717 and 65718, 2001 WL 1167121, at ¶ 14, citing *Dun v. State* (1922), 17 Ohio App. 10; see also R.C. 2939.20. Therefore, Payne's fourth assignment of error is overruled.

### III

{¶ 23} Payne's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

SLABY and WHITMORE, JJ., concur.