[Cite as *State v. Smith*, 2012-Ohio-335.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    25869 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ROBERT J. SMITH | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 10 08 2284 |

DECISION AND JOURNAL ENTRY

Dated: February 1, 2012

MOORE, Judge.

{¶1}   Appellant, Robert J. Smith, appeals from the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}   Robert J. Smith and Kariema Whitsett were married for nine years until their divorce on September 9, 2010.   On February 3, 2010, Whitsett obtained a restraining order against Smith, which in part prohibited him from coming within 500 feet of any place he knew or should have known that she would be present.  The duration of the order was five years.  On August 13, 2010, Smith and Whitsett encountered each other at a roadway intersection in Akron, Ohio.  Each was driving a car.  Based upon the events that ensued, Smith was indicted for violating a restraining order, in violation of R.C. 2919.27, and for menacing by stalking, in violation of  R.C. 2903.211(A)(1).

**{¶3}** The case proceeded to jury trial, and the jury found Smith guilty of both charges. The trial court sentenced Smith to six months of incarceration on each count, to be served concurrently. Smith timely filed a notice of appeal and presents two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

"THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT [SMITH]'S CONVICTIONS FOR MENACING BY STALKING AND VIOLATING A PROTECTION ORDER."

**{¶4}** In his first assignment of error, Smith argues that his convictions were not supported by sufficient evidence. We do not agree.

**{¶5}** The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *Id.* at 390 (Cook, J. concurring). In making this determination, an appellate court must view the evidence in the light most favorable to the prosecution:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

Violating a Protection Order

**{¶6}** Here, Smith challenges the sufficiency of the evidence in regard to his conviction for violating a protection order. R.C. 2919.27(A), in part provides that "[n]o person shall

recklessly violate the terms of * * * [a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code."

{¶7}    As part of the State's case-in-chief, it provided the testimony of Whitsett, Monita Johnson, and Officer Janusz Jaskolka.  Whitsett testified that she and Smith had a tumultuous marital relationship, with episodes of physical violence.  After their separation in 2009, Smith continued to call Whitsett and to come to her house.  On February 3, 2010, she obtained a five-year restraining order against him, a copy of which she identified as State's Exhibit 2.  However, in May of 2010, Smith came to Whitsett's place of employment as she was leaving and called her name in the parking lot.  Whitsett became afraid and returned to the building and called the police.  As a result, Smith was charged with, and convicted of, violating a protection order.

{¶8}    On August 13, 2010, Whitsett drove out of a gas station at the intersection of Hawkins Avenue and Diagonal Road in Akron, Ohio.  As she was stopped at a traffic light, she made eye contact with Smith, who was in his blue and tan Ford F150 waiting at the same traffic light, in the lane to her left.  Whitsett turned right at the light and proceeded to her aunt's home on Greenwood Avenue.  Within approximately fifteen minutes of her encounter with Smith, Whitsett was outside of her aunt's home and saw Smith's truck being driven down Greenwood Avenue.  The truck slowed down in front of her aunt's home.  A short time later, the truck again passed her aunt's home.  Whitsett called 911 and reported that Smith twice drove past her aunt's home in violation of the restraining order.

{¶9}    After officers arrived, they told Whitsett to follow them to the police station. While she was driving behind the officers on Cedar Street in Akron, she saw Smith pull onto Cedar Street behind her.  Whitsett began honking her horn to alert the police that Smith was behind her. The officers pulled over Smith.  Whitsett was crying and very upset by these events.

{¶10} Monita Johnson testified that she is Whitsett's cousin, and the two have a very close relationship. On August 13, 2010, Johnson, her mother, Whitsett, and others were riding in Whitsett's car. After pulling out of a gas station, Johnson saw Smith in his truck waiting at the street light in the lane to their left. She is familiar with Smith's truck, and described it as being blue, with a "cab on the back," two doors, and tinted windows. After Smith made eye contact with Johnson, Whitsett turned right at the intersection onto Diagonal Road toward Johnson's mother's house on Greenwood Avenue. Shortly thereafter, Johnson was outside of her mother's house and saw Smith's truck twice pass the house. The first time she saw the truck pass, it "paused" outside of the house. Although she could not see the driver of the truck due to its tinted windows which were rolled up, she testified that she was "positive" that it was Smith's truck. Johnson told Whitsett that she should call the police.

{¶11} After the police arrived, Johnson accompanied Whitsett to the police station behind the officers. While en route, Johnson saw Smith drive his truck onto the road behind them. Whitsett began honking her horn. The police then pulled over and arrested Smith. Johnson described Whitsett's demeanor at the time as "upset, scared, and just kind of shaky."

{¶12} Officer Janusz Jaskolka testified that, on August 13, 2010, the officer was dispatched to the Greenwood Avenue home of Johnson's mother. There, Whitsett complained that Smith was driving his truck slowly past the home. Officer Jaskolka was familiar with Smith and his truck because the officer had arrested him previously for violating the protection order. The officer asked Whitsett to follow the patrol car to the police station to make a complaint. While driving to the police station, Officer Jaskolka heard a horn honking and saw Whitsett pointing at Smith's truck. The officer pulled over Smith and arrested him.

{¶13} Officer Jaskolka further testified that the average lot size on Greenwood Avenue is 60 by 80 feet. Therefore, a vehicle on the street in front of Whitsett's aunt's home would be well within 500 feet of the entirety of the lot.

{¶14} Based upon the above testimony, Smith specifically contends that the State failed to provide sufficient evidence that he violated the terms of the protection order because the witnesses did not see the driver of the truck that passed Whitsett's aunt's home.

{¶15} Smith essentially argues that there was no direct evidence that he was driving the truck. However, circumstantial and direct evidence "possess the same probative value[.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Here, the witnesses testified as to the make, model, and colors of Smith's truck. Johnson further testified that Smith's truck had tinted windows, and that she was "positive" that it was his truck that was driven past her mother's house. Whitsett and Johnson testified that they saw Smith driving this truck approximately fifteen minutes before it first passed by the house. Moreover, after these incidents, Officer Jaskolka pulled over a truck identified by Whitsett as Smith's, and Smith was then driving the truck. Although it is possible that another individual drove a blue and tan Ford F150 with tinted windows twice by Johnson's house, the State was not required to disprove this possibility. Where "the State relies on circumstantial evidence to prove any essential element of an offense, it is not necessary for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Tran*, 9th Dist. No. 22911, 2006-Ohio-4349, ¶ 13. A jury could reasonably infer that, based upon the witnesses' identification of Smith as the driver of the truck shortly before and after the conduct at issue, that Smith drove the truck twice past Whitsett's aunt's home.

{¶16} Accordingly, insofar as Smith challenges the sufficiency of the evidence in regard to his conviction for violating a protection order, his first assignment of error is overruled.

<u>Menacing by Stalking</u>

{¶17} Smith further contends that his conviction for menacing by stalking was not supported by sufficient evidence. Pursuant to R.C. 2903.211(A)(1), "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

{¶18} Smith specifically challenges the sufficiency of the evidence leading to his conviction for menacing by stalking with respect to proof of the following elements: that there existed a "pattern of conduct," that the conduct was engaged in "knowingly," or that the conduct caused Whitsett to believe that Smith would cause her "physical harm" or "mental distress." *See* R.C. 2903.211(A)(1).

{¶19} R.C. 2903.211(D)(1) defines a "pattern of conduct" as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." "To determine whether two or more incidents were closely related in time, the incidents in question should be resolved by the trier of fact considering the evidence in the context of all the circumstances of the case." (Internal quotations omitted.) *State v. Payne*, 178 Ohio App.3d 617, 2008-Ohio-5447, ¶ 12 (9th Dist.). As discussed above, there was sufficient evidence from which a jury could reasonably determine that Smith twice drove his truck past the Greenwood home on August 13, 2010, within a very short span of time, and followed her car in his truck as she was headed to the police station. Thus, there was sufficient evidence of a "pattern of conduct" to support Smith's conviction for menacing by stalking.

{¶20} As to whether there was sufficient evidence that Smith engaged in conduct "knowingly" to cause Whitsett to believe he would cause her physical harm or to cause her mental distress, R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." As to whether the offender engaged in the conduct at issue in order to "cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person," the State need not prove that the offender explicitly threatened the victim. Instead, the offender's knowledge that the conduct will result in the victim fearing physical harm or suffering mental distress can be inferred by the circumstances. *See e.g. State v. Hart*, 9th Dist. No. 00CA007543, 2000 WL 1824892, *4 (Dec. 13, 2000) (victim's testimony that offender repeatedly drove past her home, when viewed in the context of the relationship between victim and offender, and the past actions of the offender, supported jury finding that victim feared physical harm or suffered mental distress).

{¶21} Here, Whitsett, Johnson and Officer Jaskolka testified that Whitsett was very upset after the officer pulled over Smith. All three testified that she was afraid, upset and crying. Officer Jaskolka said of Whitsett's demeanor, "To me it looked like she just wanted to hide herself in the corner and [was] hoping that [Smith] would not even see her[. T]hat's just how afraid she was, upset." In this case, we need not address whether Whitsett suffered "mental distress" because there was sufficient evidence that Smith knowingly caused Whitsett to believe that he would cause her physical harm. Whitsett testified that she and Smith had a tumultuous marital relationship, which involved physical abuse by him. Further, Smith was aware that Whitsett did not want or feared contact from Smith due to his knowledge of the protection order.

Moreover, Smith was aware that his previous violation of the protection order, stemming from his presence at the parking lot of Whitsett's workplace, caused Whitsett to run back into the building and to report his presence to police. Taken together, in light of Whitsett's apparent fear of Smith, a reasonable trier of fact could conclude that Smith had knowledge that his actions in driving past Whitsett's aunt's home, pausing in front of the home, driving by again, and then following her in his truck would cause Whitsett to believe that he would harm her. *See Hart, supra*; *see also State v. Honeycutt*, 2d Dist. No. 19004, 2002-Ohio-3490 (evidence sufficient to support finding that offender had knowledge that his conduct, though facially unthreatening, would cause victim to believe he would cause her physical harm based in part on prior demands by victim that offender cease contact with her, and where victim obtained a protection order against offender and had several times pressed charges against offender).

{¶22} Accordingly, Smith's first assignment of error, insofar as it pertains to the sufficiency of the evidence as to his conviction for menacing by stalking, is overruled.

## ASSIGNMENT OF ERROR II

"[SMITH]'S CONVICTIONS FOR MENACING BY STALKING AND VIOLATING A PROTECTION ORDER WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."

{¶23} In his second assignment of error, Smith argues that his convictions were against the manifest weight of the evidence. We disagree.

{¶24} When a defendant asserts that his conviction is against the manifest weight of the evidence,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**{¶25}** In making this determination, this Court is mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist.1982) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist.1987).

**{¶26}** Here, Smith specifically argues that because none of the State's witnesses could see the driver of the truck that drove twice past Johnson's home, and because Smith was at that time in Akron for other purposes which explained their "chance encounter[s]" before and after Whitsett was at Johnson's home, his convictions were against the manifest weight of the evidence. In support, at trial Smith provided the testimony of Tamara Gulledge. Gulledge testified that she has known Smith since 1989. On August 13, 2010, Gulledge saw Smith as she was walking down an Akron street approximately fifteen to twenty minutes prior to his arrest. Then, they arranged to meet later that day at the University of Akron's running track.

**{¶27}** Although Gulledge's testimony provides a purpose for Smith's presence in downtown Akron on August 13, 2010, it in no way contradicts the testimony of the State's witnesses. Further, we have repeatedly stated that the trier of fact, here the jury, "has the right to place considerable weight on the testimony of the victim." *State v. Felder*, 9th Dist. No. 91CA005230, 1992 WL 181016, *1 (July 29, 1992). After reviewing the entire record, weighing the inferences and examining the credibility of witnesses, we cannot say that this is the exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice in finding Smith guilty of violating a protection order and menacing by stalking. Accordingly, Smith's second assignment of error is overruled.

III.

**{¶28}** Smith's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

———

CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.
CONCUR

APPEARANCES:

THOMAS M. DICAUDO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.