**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Fondessy v. Simon,* **Slip Opinion No. 2014-Ohio-4638.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4638

FONDESSY, APPELLEE, *v.* SIMON, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Fondessy v. Simon,* Slip Opinion No. 2014-Ohio-4638.]**

*Certification of conflict dismissed as improvidently certified.*

(No. 2013-1574—Submitted August 20, 2014—Decided October 23, 2014.)

APPEAL from the Court of Appeals for Ottawa County, No. OT-11-041, 2013-Ohio-3465.

_____

{¶ 1}  The certification of conflict is dismissed, sua sponte, as having been improvidently certified.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, and LANZINGER, JJ., concur.

KENNEDY, FRENCH, and O'NEILL, JJ., dissent.

_____

**KENNEDY, J., dissenting.**

{¶ 2}  I respectfully dissent from the decision to dismiss this appeal as having been improvidently certified.  Courts of appeals have issued conflicting judgments on whether R.C. 2903.211(A)(1) requires an alleged stalking victim to

show actual mental distress or whether it is sufficient that the alleged victim show only that he or she believes that the alleged stalker will cause him or her mental distress. Therefore, I would address the merits of the appeal.

**Background**

{¶ 3} Appellee, Dorothy Fondessy ("Fondessy"), and her husband, Wayne, live on North Genoa-Clay Center Road in Ottawa County. In 2005, appellant, Anthony Simon, inherited the property to the north of the Fondessys from his father. Since Simon inherited the property, numerous confrontations have occurred between the parties. These confrontations led Fondessy to file a petition in accordance with R.C. 2903.214 seeking a civil stalking protection order ("CSPO") against Simon in September 2011. Under R.C. 2903.214(C), a person may seek a protection order by filing a petition alleging that the respondent engaged in a violation of R.C. 2903.211, menacing by stalking, against the person to be protected by the order. The trial court issued an ex parte civil protection order and scheduled the matter for a hearing.

{¶ 4} At the October 2011 hearing, the following evidence was presented.

{¶ 5} On one occasion after he inherited the property, Simon was upset that Fondessy's lilac bushes were hanging over onto his property. Fondessy gave Simon permission to trim the bushes. Simon used a chain saw and severely cut the bushes, including parts of the bushes that were on the Fondessy's property.

{¶ 6} The Fondessys have a pond on their property that abuts the parties' property line. Simon regularly discharged lawn clippings into the pond when mowing his lawn. One day, Fondessy noticed Simon throwing sticks and debris into the pond. She approached Simon and asked him why he was throwing garbage into the pond. Fondessy testified that Simon had denied throwing anything in the pond and had used vulgarities. Wayne then approached, and Simon said to Wayne, who had had open-heart surgery in 2005, "I hope you have

another heart attack and die." Fondessy was crying and shaking as a result of this confrontation. She testified that she had been so upset that she had called Simon a "lying son of a b* * *h."

{¶ 7} Another incident occurred when Fondessy was using a hand mower to trim her lawn at the same time that Simon was mowing his lawn. Simon approached Fondessy and ran his mower into her mower at the property line. He directed a question at Fondessy, and when she did not respond, he called her a "f* * *ing c* *t."

{¶ 8} Further, Simon sometimes used his leaf blower to blow leaves and debris from his property onto the Fondessys' property. On one occasion, Wayne was outside watching Simon do this, and Simon gave Wayne the finger and called Wayne a "black m* * * *r f* * * * *g n* * * *r." Wayne testified that this upset him. Simon also used a long pipe to discharge sump-pump water from his property onto the Fondessys' property.

{¶ 9} Fondessy stated that although Simon has never directly threatened her, his rage during her encounters with him has caused her to fear him and has caused her mental distress. She further testified that she fears for Wayne's health because he has high blood pressure and the confrontations upset him.

{¶ 10} Wayne testified that he tries not to talk to Simon because he is unreasonable. Nonetheless, he stated that he had observed many incidents and that they had been upsetting to him. He also testified that he was concerned for his health because of his heart problems.

{¶ 11} Simon admitted that he had discharged grass clippings, sticks, and other debris into the Fondessys' pond when he was mowing. He also admitted blowing leaves onto the Fondessys' property. Simon acknowledged using profanities and vulgarities in his confrontations with the Fondessys and to "flip[ing] them off." He said that the confrontations had been "heated" and upsetting to all three of them. However, he denied having called Fondessy a

"c**t" and having said that he wished Wayne would have another heart attack. He further testified that Wayne had given him the finger and that the Fondessys had also used vulgarities during the confrontations.

{¶ 12} On November 2, 2011, the trial court issued the CSPO. The trial court entered the order for the protection of the Fondessys for a period of five years. The trial court ordered Simon to stay at least 25 feet away from the Fondessys, not to initiate or have any contact with them, and not to enter or cause any item or thing to enter their property.

{¶ 13} Simon appealed to the Sixth District Court of Appeals, arguing that the CSPO entered by the trial court was not supported by sufficient evidence and was against the manifest weight of the evidence. The Sixth District concluded that the trial court did not err in granting the petition for a CSPO. In reaching its decision, the Sixth District reasoned that R.C. 2903.211(A)(1) " 'does not require that the victim actually experience mental distress, but only that the victim believes the stalker would cause mental distress or physical harm.' " 6th Dist. Ottawa No. OT-11-041, 2013-Ohio-3465, ¶ 18, quoting *Bloom v. Macbeth*, 5th Dist. Ashland No. 2007-COA-050, 2008-Ohio-4564, ¶ 11, citing *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208.

{¶ 14} Simon then requested that the Sixth District certify that its judgment is in conflict with the judgments of several other Ohio appellate courts. The Sixth District held that there is a conflict between its judgment and the judgments of other districts on whether R.C. 2903.211(A)(1) requires that a victim actually experience mental distress or requires only that the victim believe that the stalker will cause the victim mental distress, for a court to issue a CSPO under R.C. 2903.214. Accordingly, the Sixth District granted Simon's motion.

{¶ 15} On November 20, 2013, we determined that a conflict exists and ordered the parties to brief the following issue:

Whether R.C. 2903.211(A)(1) requires a victim to actually experience mental distress or only believe that the stalker will cause the victim physical harm or mental distress, for a court to issue a civil stalking protection order.

137 Ohio St.3d 1409, 2013-Ohio-5096, 998 N.E.2d 509.

**A Conflict Exists**

{¶ 16} As stated above, a petition for a civil protection order under R.C. 2903.214 must allege that the respondent engaged in a violation of R.C. 2903.211(A)(1), menacing by stalking. The fact that each appellate district has issued opinions stating what R.C. 2903.211(A)(1) requires with respect to mental distress, demonstrates that this is a widely litigated issue. Therefore, it is imperative that R.C. 2903.211(A)(1) be interpreted by appellate courts in a consistent manner. This is currently not the situation.

{¶ 17} A conflict exists among the appellate districts regarding whether R.C. 2903.211(A)(1) requires that the victim actually experienced mental distress or whether the victim's belief that the stalker will cause him or her mental distress is sufficient. The Fourth, Seventh, and Ninth Districts have concluded that R.C. 2903.211(A)(1) requires a victim to actually experience mental distress. *Smith v. Wunsch,* 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶ 11 (4th Dist.); *Caban v. Ransome,* 7th Dist. Mahoning No. 08 MA 36, 2009-Ohio-1034, ¶ 23; and *State v. Payne,* 178 Ohio App.3d 617, 2008-Ohio-5447, 899 N.E.2d 1011, ¶ 7 (9th Dist.).

{¶ 18} In contrast, the First, Second, Third, Fifth, Eleventh, and Twelfth Districts are in agreement with the Sixth District that the language of R.C. 2903.211(A)(1) requires only that the victim believes that the stalker will cause mental distress. *Griga v. DiBenedetto,* 2012-Ohio-6097, 988 N.E.2d 590, ¶ 13 (1st Dist.); *Dayton v. Davis,* 136 Ohio App.3d 26, 32, 735 N.E.2d 939 (2d

Dist.1999); *Holloway v. Parker,* 3d Dist. Marion No. 9-12-50, 2013-Ohio-1940, ¶ 23; *Bloom,* 5th Dist., 2008-Ohio-4564, ¶ 11; *Cooper v. Manta,* 11th Dist. Lake No. 2011-L-035, 2012-Ohio-867, ¶ 33; and *State v. Hart,* 12th Dist. Warren No. CA2008-06-079, 2009-Ohio-997, ¶ 31.

{¶ 19} Additionally, a review of cases in the Eighth and Tenth Districts reveals a lack of clarity with respect to which interpretation those districts follow. *Horsely,* 10th Dist., 2006-Ohio-6217, involves Kenneth Horsely, who had been convicted of menacing by stalking. In affirming his conviction, the Tenth District found that "a jury could reasonably conclude beyond a reasonable doubt that defendant * * * knowingly caused [the victim] to believe that defendant would cause her * * * mental distress." *Id.* at ¶ 47. Similarly, in affirming the granting of a CSPO in *Jenkins v. Jenkins,* 10th Dist. Franklin No. 06AP-652, 2007-Ohio-422, the court noted that "it was only necessary to establish that appellant knowingly caused [the victim] to believe he would cause her mental distress." *Id.* at ¶ 21. However, recently the Tenth District stated that "menacing by stalking involves either behavior that causes the victim to believe that he or she will be physically harmed or behavior that causes mental distress to the victim." *Osunde v. Ijeweme,* 10th Dist. Franklin Nos. 12AP-480 and 12AP-481, 2013-Ohio-1207, ¶ 8. This statement can be read as indicating a shift from the Tenth District's position in *Horsely* and *Jenkins* and to now requiring that the victim actually experience mental distress.

{¶ 20} Turning to the Eighth District, in *Rufener v. Hutson,* 8th Dist. Cuyahoga No. 97635, 2012-Ohio-5061, the court reversed the granting of a CSPO, finding that there was a lack of competent, credible evidence that "Hutson knowingly engaged in a pattern of conduct that caused [the victim] to believe that Hutson would cause him mental distress." *Id.* at ¶ 21. In *Strausser v. White,* 2009-Ohio-3597, 8th Dist. Cuyahoga No. 92091, the court again examined whether the granting of a CSPO was proper. It affirmed, finding that "White

knowingly engaged in a pattern of conduct that caused [the victim] mental distress." *Id.* at ¶ 34. As there is a dearth of analysis in *Strausser* as to which interpretation of R.C. 2903.211(A)(1) the court applied, the aforementioned statement can be read as the Eighth District's following the Fourth, Seventh, and Ninth Districts and requiring behavior that causes mental distress to the victim.

{¶ 21} The inconsistency on this issue around the state creates uncertainty for trial courts and litigants. In the Tenth and Eighth Districts there is no clear precedent. Further, litigants in the Fourth, Seventh, and Ninth Districts are treated differently than litigants in the First, Second, Third, Fifth, Sixth, Eleventh, and Twelfth Districts.

**Conclusion**

{¶ 22} This issue has troubled lower courts throughout our state. And this case is optimally positioned to resolve this question of law and provide guidance to courts and litigants. The division on this issue in the appellate courts compels us to exercise our constitutional duty. *See* Article IV, Section 2(B)(2)(f) of the Ohio Constitution. By dismissing this appeal, the majority is permitting the conflict in the appellate courts to continue. Therefore, I must dissent from the decision to dismiss the appeal as having been improvidently certified.

FRENCH and O'NEILL, JJ., concur in the foregoing opinion.

_____

Wesley M. Miller Jr., for appellant.

Ernest E. Cottrell Jr., for appellee.

_____