[Cite as *M.B. v. L.D.*, 2023-Ohio-3560.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

M. B.

    Appellee

    v.

L. D.

    Appellant

C.A. No.    23CA0006-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    22CIV0580

DECISION AND JOURNAL ENTRY

Dated: October 2, 2023

STEVENSON, Judge.

{¶1}    Respondent-Appellant, L.D. ("Grandmother"), appeals from the judgment of the Medina County Common Pleas Court in favor of Petitioner-Appellee, M.B. ("Mother").  For the reasons set forth below, this Court affirms.

I.

{¶2}    Grandmother has a son, C.D. ("Father").  Father and Mother have a minor child together.  In 2020, Father was convicted of aggravated assault with a deadly weapon and domestic violence by strangulation of Mother.  He was sentenced to eight years in a Florida penitentiary.  He subsequently lost all parental rights to the minor child and is subject to a no-contact order that prohibits him from having any contact with the minor child and Mother.  Prior to his incarceration, Father made threats to take the minor child from Mother and flee to a foreign country.  Grandmother told Mother that Father intends to seek custody of the minor child when he is released from prison.

{¶3} After Father's incarceration, Grandmother began asking Mother to lift the no-contact order and allow Father to have contact with Mother and the minor child. Grandmother and her husband also repeatedly requested photographs and regular updates on the minor child's status. Mother informed Grandmother that she was not comfortable with those requests, and eventually cut off contact with Grandmother. Mother feared that any photos or updates would be sent to Father in violation of the no-contact order, and based on Father's previous threats, violent conduct against her, and Grandmother's close relationship to Father, Mother also feared that Grandmother was working with Father to kidnap the minor child.

{¶4} Despite Mother's relocation to Medina County and attempts to conceal her new residence from Grandmother, on two occasions in June 2022, Mother and her fiancé saw Grandmother driving on the cul de sac just outside Mother's home. Grandmother resides and works in Cleveland, over 30 miles from Mother's residence, and would not normally have any reason to be in that neighborhood. On both occasions, Grandmother drove away when noticed. After the first incident, Mother called Grandmother and left a message instructing her to stay away from Mother's home. After those unwanted incidents, Mother became fearful of Grandmother and stopped letting her children go outside.

{¶5} Mother filed a petition for a civil stalking protection order against Grandmother in the Medina County Common Pleas Court. An ex parte civil stalking protection order was granted the same day. The case proceeded to a full hearing before the magistrate. Both parties testified and moved exhibits into evidence. Following the hearing, the magistrate issued a full civil stalking protection order that the trial court adopted pursuant to Civ.R. 65.1(F)(3)(c). The protection order listed Mother and her two minor children as protected parties. The magistrate found that the preponderance of the evidence showed Grandmother made unwanted visits to Mother's home, and

that based on the previous threats and abuse inflicted upon Mother by Father, as well as Grandmother's support of her son's objectives, Mother reasonably feared harm to herself and the minor child.

{¶6} Grandmother objected to the magistrate's decision on the basis that the evidence was insufficient to demonstrate that Grandmother violated the menacing by stalking statute, and therefore, did not justify a protection order. The trial court overruled Grandmother's objection. The trial court found that there was credible evidence to support the magistrate's granting of the full protection order. The trial court concluded that because of the serious criminal violence that Mother had been subjected to by Father, and the subsequent insistence of Grandmother that Father have access to Mother and the minor child, Mother reasonably feared for the minor child's safety due to Grandmother's actions. The trial court further concluded that Grandmother's pattern of conduct caused Mother mental distress in that Mother had experienced the temporary incapacity of the constant fear of her children not being safe at their residence and requiring them to stay indoors.

{¶7} Grandmother timely appealed the trial court's judgment and asserts one assignment of error for our review.

## II.

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADOPTED THE MAGISTRATE'S DECISION TO GRANT THE APPELLEE'S REQUESTED CIVIL PROTECTION ORDER.**

{¶8} In her single assignment of error, Grandmother argues that the trial court abused its discretion when it adopted the magistrate's decision granting the civil protection order because the magistrate's findings were not supported by the evidence. She argues specifically that Mother's

allegation that she drove near Mother's home on two occasions, but never got out of the car or made any threatening remarks, is insufficient to demonstrate that she violated the menacing by stalking statute. Grandmother further claims there was no evidence that Mother experienced mental distress or reasonably feared for her safety. We disagree.

{¶9} This Court generally reviews a trial court's decision to adopt a magistrate's decision for an abuse of discretion. *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049–M, 2009-Ohio-3139, ¶ 17. "Under this standard, we must determine whether the trial court's decision was unreasonable, arbitrary, or unconscionable." *Id*., citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Id*. at ¶ 18. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd*., 66 Ohio St.3d 619, 621 (1993).

{¶10} Mother petitioned for a civil stalking protection order under R.C. 2903.214. To be entitled to a civil stalking protection order, "the trial court must find that the petitioner has shown by a preponderance of the evidence the respondent committed an act against the petitioner that would constitute menacing by stalking.'" *A.S. v. P.F*., 9th Dist. Lorain No. 13CA010379, 2013-Ohio-4857, ¶ 6.

{¶11} Because Grandmother challenges the sufficiency of the evidence, "we must determine whether, viewing the evidence in the light most favorable to [Mother], a reasonable trier of fact could find that [Mother] demonstrated by a preponderance of the evidence that a civil protection order should issue." *A.D. v. B.D*., 9th Dist. Medina No. 15CA0095-M, 2017-Ohio-229, ¶ 6, quoting *R.C. v. J.G*., 9th Dist. Medina No. 12CA0081-M, 2013-Ohio-4265, ¶ 7. "'Preponderance of the evidence entails the 'greater weight of the evidence,' evidence that is more

probable, persuasive, and possesses greater probative value.'" *Davis v. KB Compost Servs.*, 9th Dist. Summit No. 21186, 2002-Ohio-7000, ¶ 10, quoting *State v. Williams*, 5th Dist. Knox No. 01 CA 24, 2002-Ohio-4267, ¶ 13.

{¶12} Thus, the question before us is whether the trial court abused its discretion in concluding that the magistrate's findings were supported by the preponderance of the evidence.

{¶13} Menacing by stalking is prohibited by R.C. 2903.211(A)(1), which provides that,

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person.

{¶14} A "pattern of conduct" means "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, * * * ." R.C. 2903.211(D)(1).

{¶15} "A person acts knowingly regardless of purpose when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶16} "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "Mental distress" means any of the following:

> (a) Any mental illness or condition that involves some temporary substantial incapacity;
>
> (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received [those] services.

R.C. 2903.211(D)(2). "'Incapacity is substantial if it has a significant impact upon the victim's daily life.'" *State v. Willett*, 9th Dist. Summit No. 25521, 2012-Ohio-1027, ¶ 10, quoting *State v.*

*Payne*, 178 Ohio App.3d 617, 2008-Ohio-5447, ¶ 9 (9th. Dist.). "'Mere mental stress or annoyance does not constitute mental distress for purposes of the menacing by stalking statute.'" *W.B. v. T.M.*, 9th Dist. Summit No. 19CA011474, 2020-Ohio-853, ¶ 10.

{¶17} R.C. 2903.211(A)(1) does not require proof that the offender explicitly threatened the victim. *J.B. v. Hartford*, 9th Dist. Summit No. 27231, 2015-Ohio-13, ¶ 8, citing *State v. Smith*, 9th Dist. Summit No. 25869, 2012-Ohio-335, ¶ 20. "Instead, the offender's knowledge that the conduct will result in the victim fearing physical harm or suffering mental distress can be inferred by the circumstances." *Smith* at ¶ 20. Also, "[a] court must take everything into consideration when determining if [a person's] conduct constitutes a pattern of conduct, even if some of the person's actions may not, in isolation, seem particularly threatening." *Guthrie v. Long*, 10th Dist. Franklin No. 04AP-913, 2005-Ohio-1541, ¶ 12.

{¶18} Mother was the victim of an aggravated assault with a deadly weapon and domestic violence by strangulation at the hands of Father. The harm was so great that Father is incarcerated for eight years. As a result, by court order Father also lost all parental rights to the minor child and is not permitted to have any contact with the minor child or Mother. Father has threatened to kidnap the minor child and to seek custody of him once he is released from prison. Thus, due to Father's actions, Mother experienced serious physical harm to her person, as well as threatened physical harm to her child. Based on that experience, it is therefore reasonable for Mother to fear that Father will harm her and/or her minor child in the future.

{¶19} Grandmother is Father's mother and paternal grandmother of the minor child. Based on the apparent closeness of those relationships and the fact that Grandmother has been communicating with Mother on Father's behalf, it is reasonable for Mother to believe that

Grandmother would work together with Father in carrying out his plans to kidnap and gain custody of the minor child, and/or inflict harm upon her.

{¶20} Grandmother repeatedly requested that Mother lift the no-contact order and/or permit Father to have contact with the minor child. Considering the gravity of the harm Mother personally experienced, the threatened harm to the minor child, and Grandmother's support of Father, it was reasonable that Mother viewed these repeated requests by Grandmother to lift the no-contact order and/or to permit contact with the minor child as threatening. Based on that history of Mother's experience, which was known to Grandmother, Grandmother therefore acted "knowingly" in making those repeated requests, i.e., with "aware[ness] that [her] conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶21} In addition, despite Mother's attempts to keep her address confidential, Grandmother apparently discovered where Mother lives and travelled to her residence on at least two occasions. Grandmother left the neighborhood upon being recognized. Again, the preponderance of the evidence showed that based on Mother's history with Father, she experienced fear that Grandmother, the person supporting the man that inflicted harm upon her and threatened to kidnap and seek custody of her minor child, would also attempt to take her minor child and/or harm her. Based on that fear, Mother experienced "mental distress" requisite to cause "temporary substantial incapacity" that necessitated keeping her children inside the home upon discovering that Grandmother had made unwanted visits to her neighborhood. R.C. 2903.211(D)(2)(a); *Willett*, 9th Dist. Summit No. 25521, 2012-Ohio-1027, at ¶ 10 ("[i]ncapacity is substantial if it has a significant impact upon the victim's daily life.").

{¶22} Upon review of the record, we conclude that the preponderance of the evidence established that Grandmother, by her pattern of conduct, engaged in behavior that knowingly

caused Mother to believe that Grandmother would harm her and/or her minor child, and knowingly caused Mother mental distress. Accordingly, the preponderance of the evidence presented at trial demonstrated that Grandmother's actions constituted menacing by stalking under R.C. 2903.211(A)(1). Therefore, the trial court did not abuse its discretion in overruling Grandmother's objection to the magistrate's decision granting the civil stalking protection order. Grandmother's single assignment of error is overruled.

## III.

**{¶23}** The judgment of the Medina County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

SUTTON, P. J.
HENSAL, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

SCOTT J. FRIEDMAN, Attorney at Law, for Appellant.

M. B., pro se, Appellee.