[Cite as *State v. Easley*, 2014-Ohio-575.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27008 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RAYSHAWN L. EASLEY, SR. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 09 2769 |

DECISION AND JOURNAL ENTRY

Dated: February 19, 2014

WHITMORE, Judge.

{¶1} Appellant, Rayshawn Easley, Sr., appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} On Friday, July 6, 2012, Calvin Riley was showing his Noble Avenue rental property to several prospective tenants. The property had been vacant for about a month and was completely empty. Riley left the property late that evening and did not return until Monday. When he arrived, he noticed the basement window had been broken and could see ceiling tiles strewn all over the basement floor. Riley entered the home through the front door to assess the damage and discovered that the back door had been kicked in. In the basement, Riley found that the ceiling tiles had been pulled down and copper plumbing had been removed. Riley then called the police.

{¶3} Officer Deandria Bethune responded to the call. When she arrived, Officer Bethune noticed drops of blood on the back porch, in the kitchen, and in the basement. The Crime Scene Unit was called out to collect evidence. A sample of the blood found in the kitchen was sent to the Ohio Bureau of Criminal Identification and Investigation ("BCI") for DNA testing. Ultimately, the DNA was matched to Easley, and he was indicted on breaking and entering, in violation of R.C. 2911.13(A), a felony of the fifth degree.

{¶4} Easley was convicted by a jury and sentenced to two years of community control. Easley now appeals and raises two assignments of error for our review.

II

Assignment of Error Number One

THE STATE OF OHIO FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT WHEN VIEWED BY THE MANIFEST WEIG[H]T OF THE EVIDENCE THAT RAYSHAWN L. EASLEY, SR. EITHER PARTICIPATED OR WAS AN ACCOMPLICE IN THE BREAKING AND ENTERING; THERE IS INSUFFICIENT EVIDENCE TO SUPPORT MR. EASLEY'S CONVICTION OF BREAKING AND ENTERING AND THUS APPELLANT'S CONVICTION IS AG[A]INST THE MANIFEST WEIGHT OF THE EVIDENCE AND BASED ON INSUFFICIENT EVIDENCE AS PERTAINS TO THE FINDING THAT HE COMMITTED THE CRIME.

THE COURT ERRED IN OVERRULING MR. EASLEY'S RULE 29 MOTION FOR ACQUITTAL.

{¶5} In his first assignment of error, Easley argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. We disagree.

**Sufficiency**

{¶6} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 23, quoting *State v. Slevin*, 9th Dist. Summit No. 25956, 2012-Ohio-2043, ¶ 15. "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine

whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

{¶7} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

{¶8} R.C. 2911.13(A) provides that "[n]o person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense * * * or any felony." "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). "'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

{¶9} A person is guilty of theft if he or she, with the purpose to deprive the owner of property, knowingly obtains or exerts control over the property without the consent of the owner. R.C. 2913.02(A)(1). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person

has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶10} Easley admits that he was in Riley's house without permission, but argues that there is no evidence to support a finding that he (1) forcefully entered the house, (2) entered with the purpose to commit a theft offense, or (3) stole the copper plumbing.

{¶11} Riley testified that he was at his Noah Avenue home on Friday, July 6, 2012, showing the rental property to prospective tenants, until late in the evening, around 8:00 p.m. or 9:00 p.m. Riley said that he returned to the property on Monday to cut the grass and, at that time, noticed a basement window had been broken. Looking through the broken window, Riley noticed broken ceiling tiles all over the basement floor. He then entered the house to assess the damage. Upon entering the front door, Riley noticed that the back door "was kicked in." He then went to the basement where he discovered the ceiling tiles had been pulled down and the copper plumbing was missing. Riley called the police to report the theft.

{¶12} Officer Bethune testified that she responded to the call from the Noah Avenue home. Officer Bethune explained that the back door had been "kicked in" and the copper plumbing in the basement ceiling was missing. Officer Bethune also testified that she noticed small drops of blood on the back porch, in the kitchen, and in the basement. According to Officer Bethune, the blood was "leading from the kitchen into the basement."

{¶13} Based on Officer Bethune's training and experience, she concluded that the point of entry was the back door. She explained that the basement window was too small for any adult to fit through and the glass from the broken window was found on the outside of the house. The Crime Scene Unit was called to the scene to take photographs and samples of the blood.

{¶14} David Niemeyer, a forensic scientist in the DNA section at BCI, testified that he performed a DNA analysis of the blood sample found in the kitchen of the Noah Avenue home. The DNA sample matched a profile in the CODIS database, a DNA database of individuals. According to Niemeyer, he requested a DNA sample from Easley to confirm that he was a match for the blood sample tested. Easley voluntarily provided a DNA sample to the police. Niemeyer testified that the results showed that Easley could not be excluded as a contributor of the DNA in the kitchen and that the "the expected frequency of occurrence of the DNA profile from the swabs from the kitchen floor * * * [was] 1 in 10,320,000,000,000,000,000,000, unrelated individuals;" a number that exceeds the current population of the Earth, according to Niemeyer.

{¶15} Detective Pat McMillan, of the Akron Police Department's Burglary Unit, testified that he was the lead investigator on the case. Detective McMillan testified that only the blood sample taken from the kitchen was tested because, in his training and experience, he believed the blood in the basement was "associated" with the blood in the kitchen.

{¶16} In viewing the evidence in a light most favorable to the State, we conclude that Easley's conviction is supported by sufficient evidence. There is no dispute that Easley was inside the home on the same weekend that the copper plumbing was stolen. A rational juror could have reasonably inferred that Easley forcefully entered the back door of the Noah Avenue home for the purpose of stealing the copper plumbing.

**Manifest Weight**

{¶17} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial,

to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins* at 387, quoting *Black's* at 1594.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶18} Easley admits that he was trespassing in the Noble Avenue home on the same weekend that copper plumbing was stolen from the house. Easley argues, however, that his conviction is against the weight of the evidence because the house is located in a high crime area and there is no evidence that he was in the basement or that he sold the copper plumbing to a scrap yard. According to Easley, it is just as likely that a prospective tenant broke into the house and stole the copper plumbing.

{¶19} Detective McMillan testified that he has worked for the Akron Police Department for twenty-four years. The last two years, Detective McMillan has worked in the Burglary Unit, and the previous thirteen years he worked robbery and homicide. Although there is photographic evidence of the blood found on the back porch and in the basement, Detective McMillan testified that the Crime Scene Unit only collected a sample of the blood found in the kitchen. Detective McMillan explained that, based on his training and experience, he believed the blood in the

basement was "associated" with the blood in the kitchen. Additionally, Officer Bethune testified that the blood was "leading from the kitchen into the basement."

{¶20} Detective McMillan also testified that, as part of his investigation, he visited two area scrap yards to see if Easley had sold any scrap metal. According to Detective McMillan, the City of Akron requires scrap yards to ask anyone attempting to sell scrap metal for a photo id and that most scrap yards comply with this requirement and even retain a copy for their records. However, Detective McMillan also explained that, in his experience, the person that steals metal is usually not the same person that sells it to a scrap yard.

{¶21} Having reviewed the record, we cannot conclude that a greater amount of credible evidence supports Easley's theory over the State's. *See Thompkins*, 78 Ohio St.3d at 387. "Where 'the State relies on circumstantial evidence to prove any essential element of an offense, it is not necessary for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" *State v. Smith*, 9th Dist. Summit No. 25869, 2012-Ohio-335, ¶ 15, quoting *State v. Tran*, 9th Dist. Summit No. 22911, 2006-Ohio-4349, ¶ 13.

{¶22} The jury concluded that Easley, by force or stealth, unlawfully entered the vacant home with the purpose to commit a theft offense. *See* R.C. 2911.13(A). Weighing the evidence, and all reasonable inferences, we cannot conclude that "the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Otten*, 33 Ohio App.3d at 340. Easley's conviction is not against the manifest weight of the evidence.

{¶23} Easley's first assignment of error is overruled.

Assignment of Error Number Two

THE PROSECUTOR COMMITTED PROSECUTORIAL MISCONDUCT SUFFICIENT TO CAUSE PREJUDICE AGAINST DEFENDANT RAYSHAWN L. EASLEY, SR. SUCH THAT HE DID NOT RECEIVE A FAIR TRIAL.

**{¶24}** In his second assignment of error, Easley argues that, because of prosecutorial misconduct, he was deprived of his right to receive a fair trial.

**{¶25}** "The test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Lott*, 51 Ohio St.3d 160, 165 (1990). "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 200, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

**{¶26}** "In the context of criminal proceedings, the Fifth Amendment privilege secures to the accused the right not to testify." *State v. Georgeoff*, 9th Dist. Medina No. 3195-M, 2002 WL 58003, *2 (Jan. 16, 2002), citing *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984). A prosecutor may not make "direct comments upon the accused's failure to take the stand." *State v. Ferguson*, 5 Ohio St.3d 160, 162 (1983). However, "the prosecution is not prevented from commenting upon the failure, on the part of the defense, to offer any other evidence in support of its case." *Id.*, quoting *State v. Lane*, 49 Ohio St.2d 77, 86 (1976).

**{¶27}** In his opening statement, defense counsel stated:

> what we will respectfully submit to you is that, yes, on July 6th Mr. Easley did enter the home, but that was after getting into a drunken argument with his fiancée, he was trying to get away from her, and he saw this empty house, the door was already kicked in, he went in and in his drunken state, yes, he cut himself on something. He's curious and looking around and he cut himself.

**{¶28}** The defense, however, presented no such evidence at trial. In its closing argument, the State said, "You heard in Defense's opening that you were going to hear a story

about how the Defendant got into a fight with his girlfriend, that's the only place you heard that from. That did not come from that witness stand." Defense counsel asked for a sidebar and moved for a mistrial. The court overruled the motion.

{¶29} In his closing argument, defense counsel also addressed the comments he made in his open statement.

> Yes, I may have made statements in opening, but part of my strategy, I may change my mind on things, because as I look at it, until Mr. Easley's guilt is proven beyond a reasonable doubt, he has no obligation to present any evidence.
>
> He has no burden to meet. That burden rests squarely with the Prosecutor.

{¶30} Reading the transcript, we cannot conclude that the State was directly commenting on Easley's decision not to testify. Easley could have presented evidence through his girlfriend, or perhaps, another witness to the alleged fight. Easley, in his opening statement, told the jury that he entered the house after a drunken fight with his girlfriend, and the State, in its closing argument, simply told the jury that the evidence presented did not support that version of the events. *See State v. Anderson*, 191 Ohio App.3d 110, 2010-Ohio-6234, ¶ 4-6 (1st Dist.) (Prosecutor's comments not improper when "reminding the jury that any possible alibi, as mentioned by [the Defendant] himself in his opening statement, had not been demonstrated").

{¶31} The prosecutor's comment, that no evidence was presented to support Easley's version of the events as described in his opening statement, was not improper. Easley's second assignment of error, as it relates to that comment, is overruled.

{¶32} Easley additionally argues that misconduct occurred when the prosecutor improperly referenced testimony in his closing argument that had been objected to and sustained.

{¶33} "[T]he prosecution is entitled to a certain degree of latitude in summation." *Lott*, 51 Ohio St.3d at 165, quoting *State v. Liberatore*, 69 Ohio St.2d 583, 589 (1982). "A prosecutor

may comment upon the evidence in his closing argument and state the appropriate conclusions to be drawn therefrom." *State v. Haynes*, 11th Dist. Ashtabula No. 2012-A-0032, 2013-Ohio-2401, ¶ 77. However, "[a] closing argument that goes beyond the record may constitute prejudicial error." *State v. Moritz*, 63 Ohio St.2d 150, 157 (1980). A reviewing court "will not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." *State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1, ¶ 142.

**{¶34}** The following exchange took place during the direct examination of Detective McMillan.

> [PROSECUTOR:] When you investigated to see if Mr. Easley had ever scrapped, what did you find?
>
> [DETECTIVE MCMILLAN:] I actually found one time where he scrapped.

Defense counsel objected, and a side bar discussion was had off the record. The court then sustained the objection. A little bit later, a juror asked the court if he was to ignore any answer that might come after an objection is sustained. The court responded, "Yes," and informed the jury that it would get instructions to that effect.

**{¶35}** In his closing argument, defense counsel stated, "We did not see any evidence of Mr. Easley ever having scrapped anything, but [the State] want[s] you to assume that." The State responded to this statement in its rebuttal.

> Defense counsel says that you didn't hear that [Easley] scrapped. In fact, I asked that question, and it was objected to. * * * So you didn't hear the answer to it.

Defense counsel objected and, at side bar, moved for a mistrial, which the court overruled.

**{¶36}** Easley argues that the prosecutor's statement "misrepresent[ed] [] the testimony" and caused "confusion to the jury when reviewed against the whole trial." Assuming arguendo

that the State's comment in rebuttal was improper, viewing the record in its entirety, we cannot conclude that Easley was prejudiced.

**{¶37}** Detective McMillan testified that, in his experience, a person that steals metal is usually not the same person that takes it to a scrap yard to sell it. According to Detective McMillan, "[o]nce they find out that * * * their ID is going to be required, a lot of times they will send somebody else in with a new ID other than themselves. Many times we see a * * * person go into the scrap yard while the individual that is going to be paid is actually waiting in the side yard waiting for payment."

**{¶38}** Easley admitted to being in the home on the same weekend that the copper plumbing was stolen. His blood was found in the kitchen. Detective McMillan testified that in his opinion, based on his training and experience, he believed the blood in the kitchen and the blood in the basement were "associated." Officer Bethune also testified that the blood drops led from the kitchen down to the basement.

**{¶39}** Additionally, the jury was instructed that evidence

does not include the answers to questions you were instructed to disregard, or the opening or closing statements of counsel.

The opening and closing statements of counsel were designed to assist you, but they are not evidence.

You must not speculate as to the reason why the [c]ourt sustained an objection to any question, or what the answer to that question might have been.

You must not draw any inference or speculate on the truth of any suggestion included in a question that was not answered.

**{¶40}** Reviewing the entire transcript, we conclude that the evidence, without the alleged improper comment, supports Easley's conviction beyond a reasonable doubt. *See Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1, at ¶ 142. Easley's second assignment of error, therefore, is overruled.

III

**{¶41}** Easley's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

CARR, P. J.
<u>CONCURS.</u>

MOORE, J.
CONCURRING.

{¶42} I concur in the opinion of the majority. I write separately to address the issue of the prosecutor's comment in closing argument that the jury did not hear evidence of Mr. Easley's scrapping metal because the court sustained the defense objection. Even after a second objection was sustained, the prosecutor offered to the jury again, "So you didn't hear the answer to it." The trial court instructed the jury that statements by counsel in opening and closing arguments are not evidence, and that the jury was not to speculate as to the reason why an objection was sustained or what the answer might have been, if given. What concerns me is that the prosecutor's repeated insistence that the jury did not hear evidence regarding scrapping because the court sustained the defense's objection flies in the face of the court's instruction in that it implies that the answer to the question would have been favorable to the State. Clearly, such an inference is improper. However, after reviewing the entire transcript, I agree with the majority that Mr. Easley was not entitled to a mistrial and his conviction should be sustained.

APPEARANCES:

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.