[Cite as *State v. Willett*, 2012-Ohio-1027.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25521 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ROBERT WILLETT | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 01 0180 |

DECISION AND JOURNAL ENTRY

Dated: March 14, 2012

BELFANCE, Presiding Judge.

{¶1} Defendant-Appellant Robert Willett[1] appeals from judgments of the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} On January 21, 2010, Mr. Willett was indicted on charges related to two separate incidents. Concerning an incident that occurred in 2006, Mr. Willett was indicted on one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree. In addition, Mr. Willett was indicted on one count of possession of criminal tools, in violation of R.C. 2923.24, a felony of the fifth degree, and one count of menacing by stalking, in violation of R.C. 2903.211(A)(1)/(A)(3), a felony of the fourth degree, for conduct he allegedly committed in 2010.

---

[1] The record has Appellant's name spelled as both Willett and Willet. It is unclear which version is correct. For purposes of consistency we will use the spelling that appears on the briefs in this Court, i.e. Willett.

**{¶3}** In March 2010, Mr. Willett filed a motion to suppress an identification based upon an allegedly impermissibly suggestive photo array. The trial court conducted an evidentiary hearing on March 29, 2010. Thereafter, the trial court denied Mr. Willett's motion to suppress.

**{¶4}** The matter proceeded to a bench trial. Based upon a Crim.R. 29 motion by Mr. Willett, the trial court concluded that the State failed to present evidence establishing the element of the possession of criminal tools and menacing by stalking offenses that would make the offenses felonies. Thus, the trial court amended those two charges to misdemeanors of the first degree. The trial court found Mr. Willett not guilty of possession of criminal tools and guilty of menacing by stalking and gross sexual imposition. Mr. Willett was sentenced to a total of eighteen months in prison and was classified as a Tier I sex offender.

**{¶5}** Mr. Willett has appealed, raising three assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

**{¶6}** While Mr. Willett has not specifically captioned an assignment of error, he asserts that the trial court erred in denying his motion to suppress the 2006 victim's identification as the photo array used was impermissibly suggestive.

> Generally, review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, [] ¶ 8. Thus, we defer to the trial court's findings of fact if they are supported by competent, credible evidence and review its application of the law to the facts de novo. *State v. Metcalf*, 9th Dist. No. 23600, 2007–Ohio–4001, [] ¶ 6.

*State v. Strehl*, 9th Dist. No. 10CA0063-M, 2012-Ohio-119, ¶ 6.

**{¶7}** In the instant matter, the trial court held an evidentiary hearing on Mr. Willett's motion. In its order denying his motion, the trial court frequently refers to evidence adduced at

the evidentiary hearing. However, Mr. Willett has not provided this Court with a transcript of that hearing. "When portions of the transcript which are necessary to resolve assignments of error are not included in the record on appeal, the reviewing court has no choice but to presume the validity of the [trial] court's proceedings, and affirm." (Internal quotations and citations omitted.) *State v. Knapp,* 9th Dist. No. 25063, 2010-Ohio-5328, ¶ 10. As the transcript of the suppression hearing is necessary for this Court to resolve Mr. Willett's assignment of error, and it has not been provided, we are required to presume regularity in the proceedings below and affirm the trial court's judgment. *See id.* Accordingly, Mr. Willett's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

APPELLANT[']S CONVICTION FOR MENACING[ ]BY STALKING UNDER THE OHIO REVISED CODE SECTION 2903.211 IS BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW[.]

ASSIGNMENT OF ERROR III

APPELLANT[']S CONVICTION FOR MENACING[ ]BY STALKING UNDER THE OHIO REVISED CODE SECTION 2903.211 IS BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW BECAUSE THE STATE FAILED TO PROVE THAT THE APPELLANT KNOWINGLY CAUSED THE VICTIM TO BELIEVE THAT HE WOULD CAUSE HER MENTAL DISTRESS[.]

{¶8} As Mr. Willett's second and third assignments of error are related, we will address them together. Mr. Willett asserts that his conviction for menacing by stalking is based upon insufficient evidence because the State failed to prove that Mr. Willett engaged in a pattern of conduct or that Mr. Willett knowingly caused the victim to believe that he would cause her mental distress.

{¶9} In determining whether the evidence presented was sufficient to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution. *State v. Jenks,* 61 Ohio St.3d 259, 274 (1991). Furthermore:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶10} R.C. 2903.211(A)(1) provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." "'Pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

> "Mental distress" means any of the following:
>
> Any mental illness or condition that involves some temporary substantial incapacity;
>
> Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

R.C. 2903.211(D)(2). "Incapacity is substantial if it has a significant impact upon the victim's daily life." (Internal quotations and citation omitted.) *State v. Payne*, 178 Ohio App.3d 617, 2008-Ohio-5447, ¶ 9 (9th Dist.). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain

nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶11} As Mr. Willett's conviction for menacing by stalking stems from his conduct in 2010, we focus on those events. On January 3, 2010, at approximately 2 a.m., the victim received a pornographic picture message on her cell phone from an unknown number. She was shocked and disgusted by the picture message. She erased it; however, because it disturbed her, it took her a couple of hours to fall back to sleep. In the morning the victim thought it might be a good idea to know who sent the message in case it was deliberately sent. She contacted her phone company and was able to obtain the number from where the picture was sent. As the victim is a realtor, she wrote the number down in the book where she keeps client phone numbers and information.

{¶12} Ten days later, the victim received a voice mail message from the same number. The man on the voice message identified himself as Tim Ramsey and stated that he would like to have the victim show "us" the house on Avondale. He wanted to see the house, which was vacant, at 5:30 p.m. the following night. Because it was January, it would have been "pitch black" at that time of day. The victim recognized the phone number as the same one the picture message came from. The man asked that the victim call that number to respond to his message. The victim testified to the following after listening to the voice mail message: "I was like immediately petrified. I mean, my first thought, which is weird, but my first thought was, oh, my gosh, someone is after me, someone wants to kill me." The victim discovered that the house that the man wanted to see was not even her listing and the house was in an area where she did not have any signs with her name and phone number.

{¶13} Because she felt she was "definitely in danger[,]" the victim contacted the police. The police agreed to be at the house when the victim showed it to the man on the voice mail. The victim then returned the phone call and set the appointment for that Thursday. The day of the appointment, the man sent the victim a text message cancelling the appointment. The victim thought maybe that that would be the end of her interactions with the man. However, just to be on the safe side, she contacted the realtor who had that house listed and gave her the number of the man in case he were to contact that realtor. Saturday, the man called the other realtor and that realtor informed him that she was unavailable. Shortly thereafter, the man called the victim to see if she was available. The police could not go to the house over the weekend, so she set up the appointment for Monday, January 18, 2010. The man again requested a 5:30 p.m. appointment. The next day, the man called again and asked to see an additional house during the Monday appointment.

{¶14} On January 18, 2010, the police were waiting inside the house on Avondale. The victim arrived early and waited in her car for the man to arrive. The man arrived and introduced himself as Tim and they proceeded to the house. Once inside, police stopped him and began to question him. The man told police that his name was Bob Willett, which was confirmed by information in his wallet. As the detective was talking to Mr. Willett, Mr. Willett began making movements towards pockets in the hoodie he was wearing. This startled the detective and he asked Mr. Willett what he was doing. Mr. Willett explained that he had scissors in his pocket. Upon searching Mr. Willett, police discovered that he had scissors, 2 pairs of electrical zip ties connected in way that they could be used as hand cuffs, a box cutter, a flashlight, a Norton Fire Department badge, and a security identification badge. Mr. Willett told the detective that he worked in security. In addition, police found the cell phone that was used to send the picture

message and make the phone calls. Mr. Willett admitted that it was his personal phone. Police discovered several pornographic images on the phone.

{¶15} Viewing the evidence in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence to establish the existence of a pattern of conduct by Mr. Willett and that by engaging in that pattern of conduct Mr. Willett knowingly caused the victim to believe that he would cause her physical harm. *See* R.C. 2903.211(A)(1).

{¶16} As noted above, a pattern of conduct refers to "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). This Court has concluded that, "[t]o determine whether two or more incidents were closely related in time, the incidents in question should be resolved by the trier of fact considering the evidence in the context of all the circumstances of the case." (Internal quotations and citation omitted.) *State v. Smith*, 9th Dist. No. 25869, 2012-Ohio-335, ¶ 19. Moreover, it does not appear that Mr. Willett is asserting that the incidents were not "closely related in time," but is instead arguing that there were not multiple actions or incidents. R.C. 2903.211(D)(1). Mr. Willett also asserts that there was no evidence that the victim suffered mental distress. However, we conclude there was sufficient evidence that Mr. Willett's pattern of conduct caused her to believe that he would cause her physical harm. *See* R.C. 2903.211(A)(1); *see also State v. Morris*, 8th Dist. No. 92080, 2009-Ohio-4711, ¶ 18; *State v. Davidson,* 2nd Dist. No. 14638, 1995 WL 396455, *2 (June 28, 1995). Thus, we are not persuaded by Mr. Willett's arguments.

{¶17} Viewing the evidence in the light most favorable to the State, there was sufficient evidence to support the trier of fact's conclusion that Mr. Willett engaged in a pattern of conduct, and that by engaging in the pattern of conduct, Mr. Willett knowingly caused the victim to

believe that he would cause her physical harm. The pattern of conduct began with Mr. Willett sending the victim, who was a stranger to him, a pornographic picture message. Ten days later, Mr. Willett called to set up an appointment, using a false name, with the victim to view a house at night that she did not have listed. Further, after Mr. Willett cancelled the initial appointment, he ultimately rescheduled with the victim. Unsurprisingly, the victim was frightened by the fact that the stranger who sent her a pornographic picture message contacted her again to meet with her alone, at night. She testified that she was "petrified" and concerned that Mr. Willett was going to try to kill her. We note that "[i]ntent need not be proved by direct evidence. This is because, [n]ot being ascertainable by the exercise of any or all of the senses, [intent] can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances[.]" (Internal quotations and citations omitted.) *State v. Wenker,* 9th Dist. No. 25185, 2011-Ohio-786, ¶ 14. Here, a trier of fact could reasonably infer that, given the highly intimidating and invasive nature of Mr. Willett's pattern of conduct, he was aware that his actions would probably cause the victim to believe that he would harm her. *See, e.g., State v. Werfel,* 11th Dist. No. 2006-L-163, 2007-Ohio-5198, ¶ 27 (noting that "[w]hile no one, including [the victim] herself, told [the defendant] directly that [the victim] desired [the defendant] to leave her alone, by his very actions, [the defendant] knowingly acted in such a way that would cause a reasonable person to feel threatened of physical harm and/or suffer mental distress[]").

**{¶18}** Accordingly, we overrule Mr. Willett's second and third assignments of error.

III.

{¶19} In light of the foregoing, we overrule Mr. Willett's assignments of error and affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR

APPEARANCES:

DONALD J. MALARCIK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.