[Cite as *State v. Nielsen*, 2024-Ohio-617.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.      23CA0003-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TIMOTHY A. NIELSEN | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.      22CR0605 |

DECISION AND JOURNAL ENTRY

Dated: February 20, 2024

STEVENSON, Judge.

{¶1}    Defendant-Appellant Timothy Nielsen appeals his convictions and sentence by the Medina County Court of Common Pleas.  For the reasons set forth below, we affirm.

I.

{¶2}    In August 2022, Mr. Nielsen was indicted by the Medina County Grand Jury as follows: count one, menacing by stalking with a sexual motivation, a felony of the fourth degree, in violation of R.C. 2903.211(A)(3)(B)(2)(d); count two, menacing by stalking, a felony of the fourth degree, in violation of R.C. 2903.211(A)(1)(B)(2)(d); and count three, importuning, a felony of the third degree, in violation of R.C. 2907.07(A)(F)(2). The indictment specified that the conduct giving rise to the charges occurred on or about January 1, 2017, through July 28, 2022.

{¶3}    Mr. Nielsen pleaded not guilty, and the case proceeded to a jury trial. The State presented the testimony of the minor victim M.S., M.S.'s parents, four police officers, M.S.'s family friend G.R., and W.N., a neighbor of M.S.  The State's exhibits, which consisted of video

footage from the police officers' body worn cameras and Ring camera videos from M.S.'s residence, were admitted into evidence. After the State rested, Mr. Nielsen's motion for acquittal was overruled. Mr. Nielsen did not present any evidence and rested his case. He then renewed his motion for acquittal which the trial court overruled.

{¶4} Mr. Nielsen was found guilty on all three counts. At sentencing, the trial court found that counts one and two were allied offenses of similar import per R.C. 2941.25(A) and merged count two into count one. On count one, menacing by stalking with sexual motivation, the trial court sentenced Mr. Nielsen to 18 months in prison. On count three, importuning, the trial court sentenced Mr. Nielsen to 36 months in prison, to be served consecutively with count one, resulting in an aggregate prison term of 54 months.

{¶5} Mr. Nielsen timely appeals and sets forth five assignments of error for our review. This Court has rearranged his assignments of error for ease of analysis.

## ASSIGNMENT OF ERROR III

**NIELSEN''S (SIC) CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW[.]**

{¶6} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. A sufficiency review does not "resolve evidentiary conflicts or assess the credibility of witnesses * * *." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10. Sufficiency

"concerns the State's burden of production and is, in essence, a test of adequacy." *State v. Wilk*, 9th Dist. Medina No. 22CA0008-M, 2023-Ohio-112, ¶ 9.

{¶7} Mr. Nielsen was convicted of menacing by stalking under R.C. 2903.211(A)(3)(B)(2)(d) and (A)(1)(B)(2)(d). R.C. 2903.211(A)(1) prohibits menacing by stalking and provides that:

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person.

{¶8} Under R.C. 2903.211(A)(3), there is the additional requirement that the defendant acted with sexual motivation. "Sexual motivation" means with "a purpose to gratify the sexual needs or desires of the offender." R.C. 2971.01(J). Under section R.C. 2903.211(B)(2)(d), the victim must be a minor.

{¶9} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶10} "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "Mental distress" means any of the following:

> (a) Any mental illness or condition that involves some temporary substantial incapacity;
>
> (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received [those] services.

R.C. 2903.211(D)(2). "'Incapacity is substantial if it has a significant impact upon the victim's daily life.'" *State v. Willett*, 9th Dist. Summit No. 25521, 2012-Ohio-1027, ¶ 10, quoting *State v.*

*Payne*, 178 Ohio App.3d 617, 2008-Ohio-5447, ¶ 9 (9th Dist.). "'Mere mental stress or annoyance does not constitute mental distress for purposes of the menacing by stalking statute.'" *W.B. v. T.M.*, 9th Dist. Lorain No. 19CA011474, 2020-Ohio-853, ¶ 10, quoting *Morton v. Pyles*, 7th Dist. Mahoning No. 11 MA 124, 2012-Ohio-5343, ¶ 15. "A court must take everything into consideration when determining if [a person's] conduct constitutes a pattern of conduct, even if some of the person's actions may not, in isolation, seem particularly threatening." *Guthrie v. Long*, 10th Dist. Franklin No. 04AP-913, 2005-Ohio-1541, ¶ 12.

{¶11} Mr. Nielsen was also convicted of importuning under R.C. 2907.07(A)[1] which provides that "[n]o person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person." "Solicit" means to seek, to ask, to influence, to invite, to tempt, to lead on, or to bring pressure to bear. 2 Ohio Jury Instructions, Section 507.07(2) (2006). "Sexual activity" means sexual conduct or sexual contact or both. R.C. 2907.01(C).

{¶12} "Sexual conduct" under R.C. 2907.01(A) means:

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶13} "Sexual contact" means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "[T]he trier of fact may infer a purpose of sexual arousal or gratification from the 'type, nature and circumstances

---

[1] R.C. 2907.07 was amended effective April 4, 2023. The charges in this case were filed on August 2, 2022. Therefore, all references to this section shall pertain to the prior version, which was in effect from March 22, 2019, to April 3, 2023.

of the contact, along with the personality of the defendant." *State v. Edwards*, 9th Dist. Lorain No. 12CA010274, 2013-Ohio-3068, ¶ 10.

{¶14} Because the statute defining importuning does not include a degree of culpability and is not a strict liability offense, the indictment and the trial court's instructions to the jury stated that the correct mental state is "recklessly" under R.C. 2901.21(C)(1), which provides:

> When language defining an element of an offense that is related to knowledge or intent or to which mens rea could fairly be applied neither specifies culpability nor plainly indicates a purpose to impose strict liability, the element of the offense is established only if a person acts recklessly.

*State v. Kelly*, 4th Dist. Hocking No. 20CA5, 2021-Ohio-2007, ¶ 2.

{¶15} A person acts "recklessly" when,

> with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C). Under R.C. 2907.07(F)(2), any violation of division (A) is a felony of the third degree and a prison term is presumed.

{¶16} At trial, the State produced the following testimony and evidence. M.S. testified that her date of birth is in November 2008. When she was seven or eight years old, she created a You Tube page with her friend M.Q. The page included videos of M.S. doing arts and crafts and other fun things with some of her friends as well as relaxation videos designed to help people fall asleep. M.S. started getting concerning comments from Mr. Nielsen such as that "he wants to plant his seed in [M.S.] and then sacrifice [M.S.]" M.S. testified that those comments made her feel nervous and afraid because she interpreted them to mean that Mr. Nielsen wanted to rape and kill her. Mr. Nielsen also had his own You Tube and Tik Tok channels where he posted videos directed at M.S. and M.Q. M.S's mother ("Mother") tried to block Mr. Nielsen many times

because M.S. wanted his communications to stop, but he continued making new accounts after each of his accounts were blocked in order to keep following M.S.

{¶17} Mother set up a P.O. Box for M.S. so that M.S. could correspond with people who enjoyed her videos. Mother did this because she did not want to publish the family's address on M.S.'s You Tube page. Mr. Nielsen sent things to M.S. at the P.O. Box such as pages of Bible verses, drawings of M.S., clay dolls, a bag of seeds, and what appeared to be urine. This made M.S. concerned for her safety.

{¶18} Mother testified that when Mr. Nielsen began commenting on M.S.'s You Tube page, he seemed overly interested in M.S. inappropriately. He would comment about wanting he and M.S. and M.Q. to all be together to fulfill some type of God-like mission. At one point, Mr. Nielsen commented that "your parents could just, you know, let me have you[.]" This caused Mother to believe that "something was not right with this[.]" Because the packages that came to M.S.'s P.O. Box from Mr. Nielsen were sent from Portland, Oregon, Mother got the FBI involved and shut down M.S.'s You Tube page and P.O. Box in late 2019. An FBI agent told Mother not to worry because Mr. Nielsen was too mentally unstable to leave the State of Oregon and travel to Ohio.

{¶19} Five years later, in July 2022, Mr. Nielsen travelled from Portland, Oregon to Brunswick, Ohio, where M.S. and her parents reside. On July 16, 2022, Mr. Nielsen left Mother a voicemail stating that he was "trying to get ahold of [M.S.]" and "[c]ould you please pass on a message to [M.S.] to call me." Mother recognized Mr. Nielsen's voice from his You Tube videos but never dreamed he might be calling from somewhere nearby. Shortly thereafter, a man was seen on the Ring camera at M.S.'s family's residence. He was walking through the backyard

carrying a tarp and a bag and appeared to be homeless. M.S. and her parents did not realize at first that the man was Mr. Nielsen.

{¶20} A few days later, Mr. Nielsen came back into the neighborhood, walked through M.S.'s back yard, and started knocking on doors asking for M.S. Mr. Nielsen eventually came to the front door of M.S.'s house and rang the doorbell. Because no one in M.S.'s family recognized him, they did not answer. M.S.'s father ("Father") called the police.

{¶21} Brunswick Police Officer Brian Mummert testified that when he arrived on the scene, Mr. Nielsen was in the driveway and told him he was looking for a girl he had met on the internet approximately five years ago, and that he just wanted a yes-or-no answer if the girl wanted to be with him or not. At that same time, Father was walking down the driveway and inquired "[a]n answer from who?" After Mr. Nielsen called out Father's name and asked if that's who Father was, Father realized Mr. Nielsen was the same man who had harassed M.S. online five years ago and asked Officer Mummert to take Mr. Nielsen into custody. At that point, Mr. Nielsen became agitated, started yelling, and asked Father if he was going to forbid him from seeing M.S. Mr. Nielsen was then handcuffed and arrested.

{¶22} When M.S. viewed the Ring camera footage, she recognized the voice from the videos she had seen on You Tube five years earlier and realized it was Mr. Nielsen. This made M.S. "scared for [her] life." Because of Mr. Nielsen's previous unwelcome contact, M.S. did not want to hear from him again and never imagined he would travel thousands of miles from Oregon to her front door. Mother testified that M.S. started bawling when she recognized Mr. Nielsen's voice on the Ring camera.

{¶23} Brunswick Officer Samuel Galiardi testified that several days prior, he responded to a call about a male walking aimlessly at a park in Brunswick who turned out to be Mr. Nielsen.

Mr. Nielsen told Officer Gagliardi that he had flown to Ohio from Oregon to "meet a female and see if he could make things work." Brunswick Detective Sarah Merhaut testified that she was assigned to investigate Mr. Nielsen's case. Her supervisor advised her that when Mr. Nielsen was arrested, he admitted to travelling from Oregon to Ohio with the intention of seeking out a young girl who he believed to be six years old. After the FBI provided Detective Merhaut with reports on Mr. Nielsen, she spoke briefly with M.S. who told her she was afraid that Mr. Nielsen would be getting out of jail.

{¶24} Detective Merhaut's investigation of the case revealed Mr. Nielsen's You Tube channel, which he used to comment on M.S.'s You Tube channel. Detective Merhaut described the comments as "disturbing in nature." She also characterized the items Mr. Nielsen mailed to M.S. as "demonic and satanic ritualistic type of things * * * you know, content that * * * [M.S.] was freaked out." She further testified that the comments on Mr. Nielsen's Facebook page showed Mr. Nielsen was soliciting M.S. to come to him for his mission; that he sought two wives; that he believed Armageddon would soon be coming; that he could live eternally by converting back to a child and then having a child with a young virgin female; that when they conceived that child, the child would be offered to God and that offering would be the key to unlocking his own kingdom where he and his wife would live forever and make more children to populate the world. She described nearly all the Facebook posts as being "sexual in nature."

{¶25} Officer Merhaut described a video on Mr. Nielsen's You Tube channel in which he had a ligature around his neck while apparently nude and with an item strapped to his face. Mr. Nielsen then took a lighter and caught his hair and face on fire. She testified that this is "indicative of autoerotic asphyxiation." In all, there were 288 videos specifically targeted toward M.S. and M.Q. and Mr. Nielsen wanting them to come to him, be his wives, and have children.

{¶26} In this assignment of error, Mr. Nielsen argues that the trial court committed reversible error in overruling his motion for judgment of acquittal, and that his convictions were not supported by sufficient evidence. Regarding the menacing by stalking convictions, he maintains that there is no evidence that there was any sexual motivation or that he knowingly caused another to believe that he would cause physical harm or emotional distress. The only record evidence that Mr. Nielsen offers in support is that on one of the police officer's body worn camera videos from July 2022, Mr. Nielsen is overheard saying he was not looking for sex. Regarding the conviction for importuning, he claims there was no evidence that he ever solicited M.S. to engage in sexual conduct with him. We disagree with Mr. Nielsen.

{¶27} The State established that Mr. Nielsen "knowingly cause[d] another person to believe that [he] will cause physical harm to the other person * * * or cause[d] mental distress to the other person * * *[,]" and thus committed the crime of menacing by stalking under R.C. 2903.211(A)(1). M.S.'s own testimony established that she was "scared for [her] life[,]" concerned for her safety, and thought Mr. Nielsen wanted to rape her. Officer Merhaut describes M.S. as being "freaked out" and fearful of Mr. Nielsen getting out of jail. Mother testified that M.S. started crying when she saw Mr. Nielsen on the Ring camera video. From that evidence, the jury could have reasonably inferred that M.S. suffered "temporary substantial incapacity" beyond "mere mental stress or annoyance" and experienced mental distress. R.C. 2903.211(D)(2)(a); *W.B. v. T.M.*, 9th Dist. Lorain No. 19CA011474, 2020-Ohio-853 at ¶ 10.

{¶28} In one of his comments on M.S.'s You Tube channel, Mr. Nielsen said he wanted to "plant his seed in her and then sacrifice her" which could reasonably be inferred to mean, as M.S. feared, that he wanted to rape her, and therefore, "cause[d] [M.S.] to believe that [he] will cause physical harm to [her] * * * ." R.C. 2903.211(A)(1).

{¶29} M.S. and Mother both testified that Mother blocked Mr. Nielsen from M.S.'s You Tube channel many times, so he should have been aware that his contact with M.S. was unwanted. Yet, Mr. Nielsen continued to create new profiles and contact M.S. through them. Therefore, the jury could have reasonably inferred that Mr. Nielsen was "aware that his conduct would probably cause a certain result or will probably be of a certain nature"; that is, cause mental distress and fear of physical harm, and therefore, acted "knowingly." R.C. 2901.22(B).

{¶30} The testimony and evidence also established that Mr. Nielsen's You Tube posts and comments referring to M.S. were sexually motivated. His comment that "he wanted to plant his seed in [M.S.]" raised the reasonable inference that he wanted to engage in sexual intercourse with her. His videos depicted his plan to take M.S. as his wife and conceive a child, another reference to the act of sexual intercourse. He told Officer Galiardi that he came to Ohio to "meet a female and see if he could make things work." Officer Merhaut testified that one of Mr. Nielsen's videos depicted an act that was "indicative of autoerotic asphyxiation" that occurs just prior to orgasm. Thus, the jury could have reasonably inferred that Mr. Nielsen acted with a "purpose to gratify [his] sexual needs or desires * * * ", and therefore, acted with a "sexual motivation." R.C. 2971.01(J).

{¶31} The State also met its burden of production regarding whether Mr. Nielsen committed the crime of importuning under R.C. 2907.07(A) by "solicit[ing] a person who is less than thirteen years of age to engage in sexual activity * * * , whether or not [he] knew the age of such person." M.S. testified that she was seven or eight years old, and therefore under the age of 13, when Mr. Nielsen commented on her You Tube videos, made M.S. the subject of his own social media posts, and sent letters to her P.O. Box. As defined above, "sexual activity" includes either "sexual conduct" or "sexual contact." R.C. 2907.01(C). As previously noted, Mr. Nielsen's

comment that he wanted to "plant his seed in her" could be reasonably inferred to mean that he wanted to engage in sexual intercourse with M.S. "Vaginal intercourse" is included in the definition of "sexual conduct." R.C. 2907.01(A). Therefore, the jury could have reasonably inferred that Mr. Nielsen wanted to engage in "sexual activity." R.C. 2907.01(C).

{¶32} Mr. Nielsen also sent M.S. seeds in the mail. In the context of his comment that he wanted to "plant his seed in her," sending the seeds raised the reasonable inference that Mr. Nielsen "solicited" M.S. by "invit[ing]" or "bring[ing] pressure to bear" upon her to engage in sexual intercourse. 2 Ohio Jury Instructions Section 507.07(2) (2006). Even though Mr. Nielsen was confused about M.S.'s age, stating that he thought she was six years old, R.C. 2907.07(A) does not require that Mr. Nielsen knew her age. Since it was previously established that Mr. Nielsen acted "knowingly," he necessarily acted "recklessly" because "recklessly" is a subset of "knowingly." R.C. 2901.22(E).

{¶33} In light of the foregoing, the jury could have reasonably inferred that Mr. Nielsen "solicit[ed] a person who is less than thirteen years of age to engage in sexual activity * * *, whether or not [he] knew the age of such person[,]" and was guilty of importuning beyond a reasonable doubt. R.C. 2907.07(A).

{¶34} Upon review, Mr. Nielsen has not shown that his convictions for menacing by stalking with sexual motivation, menacing by stalking, and importuning are based on insufficient evidence. Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved beyond a reasonable doubt that Mr. Nielsen committed the crimes of menacing by stalking under R.C.2903.211(A)(3)(B)(2)(d) and R.C. 2903.211(A)(1)(B)(2)(d) and importuning under R.C. 2907.07(A)(F)(2). *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. Mr. Nielsen's third assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

**[NIELSEN'S] CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶35} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten,* 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26. This Court "'will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version.'" *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 25, quoting *State v. Tolliver*, 9th Dist. Lorain No.16CA010986, 2017-Ohio-4214, ¶ 15. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶36} Having reviewed the record and the arguments presented, this Court concludes Mr. Nielsen has not shown that this is the exceptional case in which the evidence weighs heavily against his convictions. *See Croghan* at ¶ 26. The jury heard testimony and viewed video evidence presented by the State. The State set forth evidence from which the trier of fact could reasonably conclude that the State proved all the essential elements of menacing by stalking with sexual motivation, menacing by stalking, and importuning beyond a reasonable doubt. *See* Discussion *supra.* Mr. Nielsen did not present any contrary evidence.

{¶37} Based on the foregoing, this Court concludes that Mr. Nielsen has not shown that the jury lost its way when it chose to believe the State's evidence. The jury, as the trier of fact, was in the best position to evaluate the credibility of the testimony and evidence and was free to believe the State's evidence. *See State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. Accordingly, this Court rejects Mr. Nielsen's argument that his convictions were against the manifest weight of the evidence. Mr. Nielsen's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED STATE'S WITNESS TO TESTIFY ABOUT HEARSAY STATEMENTS IN VIOLATION OF NIELSEN'S RIGHT TO CONFRONT WITNESS PROTECTED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.**

{¶38} At trial, Mother testified on direct examination to what an FBI agent told her when she reported her concerns about Mr. Nielsen:

Q: (Prosecutor) Was there anything that reassured you, after the FBI got involved, that you and your family would be okay, that you'd be safe?

A: (Mother): Yes.

Q: What?

A: He told us that Timothy Nielsen was completely mentally unstable, barely able to take care of himself.

{¶39} The trial court overruled Mr. Nielsen's hearsay objection but followed up its ruling with a limiting instruction that the statement was only to be considered "to demonstrate to [the jury] the effect that those statements had on the witness."

{¶40} Mr. Nielsen argues that the trial court committed reversible error when it overruled his objection. He claims the FBI agent's out of court statement constitutes hearsay, and that the improper admission of the statement violated his Sixth Amendment right to confront witnesses

against him because it was not subject to cross-examination. We disagree because the statement is not hearsay.

> Generally, [a] trial court possesses broad discretion with respect to the admission of evidence. However, the trial court does not have discretion to admit hearsay into evidence. Moreover, if a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate. Whether evidence is admissible because it falls within an exception to the hearsay rule is a question of law, thus, our review is de novo.

(Internal citations and quotations omitted.) *State v. Sanders*, 9th Dist. Summit No. 24654, 2009-Ohio-5537, ¶ 40.

**{¶41}** Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, Mother's testimony regarding the FBI agent's out of court statement was not offered to prove the "truth of the matter asserted," meaning whether Mr. Nielsen was in fact mentally unstable and unable to take care of himself. Rather, as the trial court explained in its limiting instruction, the statement was offered to show that this knowledge caused Mother to believe at that time that it was unlikely Mr. Nielsen would be able to actually leave Oregon to seek out and find her daughter in Ohio. Therefore, the statement did not meet the definition of hearsay under Evid.R. 801(C). Because the statement did not constitute hearsay, the trial court did not err in overruling Mr. Nielsen's hearsay objection. Accordingly, Mr. Nielsen's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED MULTIPLE STATE'S WITNESS TO TESTIFY ABOUT YOU TUBE VIDEOS EITHER ALLEGEDLY DEFENDANT'S OWN YOU[]TUBE VIDEOS' (SIC) OR DEFENDANT'S COMMENTARY ON ALLEGED VICTIM'S YOU TUBE PAGE IN VIOLATION OF NIELSEN'S RIGHT TO CONFRONT WITNESS PROTECTED BY THE SIXTH**

**AMENDMENT OF THE UNITED STATES CONSTITUTION AND IN VIOLATION OF EVIDENCE RULE 1004[.]**

{¶42} Detective Merhaut testified to the contents of Mr. Nielsen's You Tube and TikTok videos, characterizing them as "sexual in nature" with respect to M.S. Mother testified that Mr. Nielsen made "inappropriate comments" on M.S.'s You Tube videos. Mr. Nielsen's counsel objected to this testimony based on the best evidence rule. He argued that the original video and writings, rather than testimony describing them, should have been introduced. The trial court overruled Mr. Nielsen's objections.

{¶43} In this assignment of error, Mr. Nielsen argues that the trial court committed reversible error when it admitted Detective Merhaut's and Mother's testimonies of what they observed on the videos and in Mr. Nielsen's comments because it constituted hearsay and violated the best evidence rule. We disagree.

{¶44} As a threshold matter, we note that Mr. Nielsen's objection at trial was limited to the best evidence rule and did not include a hearsay objection. Therefore, because Mr. Nielsen did not raise the issue at trial, his hearsay objection is forfeited absent plain error. *State v. Allen*, 73 Ohio St.3d 626, 634-35 (1995). Because Mr. Nielsen failed to demonstrate that he posed a hearsay objection at trial and has not argued plain error on appeal, we overrule his argument on that basis. *See State v. Keresztesi*, 9th Dist. Medina No. 2651-M, 1997 WL 772830, *9 (Dec. 3, 1997); *see also State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 18. It is not the role of this court to craft a plain error argument for an appellant who fails to do so. *State v. Krowiak*, 9th Dist. Medina No. 21CA0003-M, 2022-Ohio-413, ¶ 37.

{¶45} The best evidence rule is set forth in Evid.R. 1002 and provides, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules[.]" "The best evidence rule rests on the fact

that an original writing is more reliable, complete, and accurate as to its contents and meaning." *State v. Jones*, 8th Dist. Cuyahoga No. 102318, 2015-Ohio-4694, ¶ 30, citing *U.S. v. Holton*, 116 F.3d 1536, 1545 (D.C.Cir.1997). The original is not required and other evidence of the contents of a writing is admissible if (1) all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith, (2) the original is not obtainable, (3) the original is in possession of the opponent, or (4) the writing, recording, or photograph is not closely related to a controlling issue. Evid.R. 1004.

**{¶46}** Here, Mr. Nielsen argues that the testimony concerning what Detective Merhaut and Mother observed on Mr. Nielsen's videos and M.S.'s You Tube page was intended to prove their contents; i.e., that Mr. Nielsen's contact with M.S. was inappropriate and sexually motivated, thus implicating the best evidence rule. Yet, none of the Evid.R. 1004 factors that would have excused the originals requirement were present. Therefore, Mr. Nielsen maintains that the testimony is inadmissible.

**{¶47}** Assuming without deciding that the best evidence rule was violated, it is well-settled that "[w]hen there is other evidence sufficient to sustain a conviction, a best evidence error is harmless because the outcome of the proceedings would not be different." *State v. Petty*, 10th Dist. Franklin No. 15AP-950, 2017-Ohio-1062, ¶ 54, citing *State v. Salaam,* 1st Dist. Hamilton Nos. C-150092, C-150099, 2015-Ohio-4552, ¶ 11. "If a defendant has not demonstrated prejudice, any violations of the best evidence rule do not require reversal." *Id.* citing *State v. Rogan*, 94 Ohio App.3d 140, 163 (2d Dist.1994).

**{¶48}** Here, even if the admission of the testimony regarding the contents of Mr. Nielsen's videos and comments violated the best evidence rule, any error in admitting that testimony was harmless error because it did not result in prejudice nor affect Mr. Nielsen's substantial rights.

*Salaam* at ¶ 9. Even without the testimony regarding the videos and comments, the outcome would not have been different because the remaining properly admitted evidence, standing alone, constitutes overwhelming proof of Mr. Nielsen's guilt. *See* Discussion *supra; State v. Williams*, 6 Ohio St.3d 281, 290 (1983). Therefore, based on the foregoing, Mr. Nielsen's second assignment of error is overruled.

## ASSIGNMENT OF ERROR V

**THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO PRISON TERM AND CONSECUTIVE PRISON TERMS SENTENCES.**

**{¶49}** Under this assignment of error, Mr. Nielsen's merit brief merely sets forth the trial court's sentencing decision and the appellate standard of review but does not include any argument as to how the trial court erred when it sentenced him to consecutive prison terms.

**{¶50}** When an appellant fails to support his assignment of error by citing to the record and pointing to case law to support the argument, this Court may disregard the argument in its entirety. *Marquez v. Jackson*, 9th Dist. Lorain No. 16CA011049, 2018-Ohio-346, ¶ 21, citing App.R. 16(A)(7) and former Loc.R. 7(B)(7). Mr. Nielsen does not cite to any portions of the record or to any case law that supports his claim that the trial court erred when it sentenced him to a prison term and ordered the sentences to run consecutively. We will not develop an argument for him. Mr. Nielsen's fifth assignment of error is overruled.

III.

**{¶51}** Based on the foregoing, Mr. Nielsen's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

HENSAL, P. J.
CONCURS IN JUDGMENT ONLY.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.